**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

DeWAYNE WALKER, SR, KAREN    :
WALKER, his wife, D.W., JR.., minor    :
child, and T.W., minor child,    :
   :
      Plaintiffs,    :     C.A. No. 06-288 \_\_\_
   :
      v.    :
   :
THE CITY OF WILMINGTON, a political    :
subdivision of the State of Delaware,    :
DETECTIVE MICHAEL R. LAWSON, JR.,    :
individually and in his official capacity, and    :
UKNOWN ENTITIES,    :

**DEFENDANTS' OPENING BRIEF IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT**

Alex J. Mili, Jr., Esquire (I.D. #4125)
Senior Assistant City Solicitor
Louis L. Redding City/County Building
800 N. French Street, 9th Floor
Wilmington, DE 19801
(302) 576-2175
Attorney for Defendants City of Wilmington and
Detective Michael R. Lawson, Jr.

DATE: June 22, 2007

## TABLE OF CONTENTS

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

NATURE AND STAGE OF PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    1.    INVESTIGATION OF THE FREEMAN HOMICIDE . . . . . . . . . . . . . . . . . . . . . . . 3

    2.    THE SEARCH FOR DEWAYNE WALKER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    3.    THE TIP FROM THE CONFIDENTIAL INFORMANT . . . . . . . . . . . . . . . . . . . . . . 4

    4.    CORROBORATION OF THE CONFIDENTIAL INFORMANT'S TIP . . . . . . . . . . . 5

    5.    THE SEARCH WARRANT FOR 118 DUTTON DRIVE . . . . . . . . . . . . . . . . . . . . . . 5

    6.    THE EXECUTION OF THE SEARCH WARRANT AT 118 DUTTON DRIVE . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    I.    PLAINTIFFS' FOURTH AMENDMENT CLAIM MUST FAIL BECAUSE THE MISTAKEN ENTRY INTO PLAINTIFFS' HOME WAS AUTHORIZED BY A VALID SEARCH WARRANT, AND WAS EXECUTED IN A REASONABLE MANNER AND DURATION - COUNTS I & IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        A.    THE *FRANKS* ANALYSIS: VALID WARRANT SUPPORTED BY PROBABLE CAUSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

            1.    NO DELIBERATE FALSEHOOD OR RECKLESS DISREGARD FOR THE TRUTH . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            2.    THE AFFIDAVIT CONTAINS SUFFICIENT CONTENT TO ESTABLISH PROBABLE CAUSE . . . . . . . . . . . . . . . . . . . . . . . . . 10

        B.    THE *GRAHAM* FACTORS: PROPER EXECUTION OF A VALID WARRANT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    II.    PLAINTIFFS' FOURTEENTH AMENDMENT CLAIMS MUST FAIL BECAUSE (A.) THE DUE PROCESS CLAUSE DOES NOT APPLY TO SEARCH AND ARREST, AND (B.) THE EQUAL PROTECTION CLAUSE DOES NOT APPLY UNLESS PLAINTIFFS CAN ESTABLISH PURPOSEFUL DISCRIMINATION (WHICH THEY CANNOT) - COUNTS IV AND VI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        A    THE DUE PROCESS CLAUSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        B.    THE EQUAL PROTECTION CLAUSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

III.  PLAINTIFFS' SECTION 1983 CLAIM DERIVED FROM STATE TORT LAW MUST FAIL BECAUSE SECTION 1983 IS LIMITED TO VIOLATIONS OF FEDERAL CONSTITUTIONAL RIGHTS - COUNT II ............................... 18

    A.  NEGLIGENCE ................................................ 18

    B.  BATTERY ................................................... 19

    C.  FALSE ARREST ............................................. 19

    D.  CIVIL RIGHTS .............................................. 20

IV.  PLAINTIFFS' CLAIM OF NEGLIGENT TRAINING/SUPERVISION MUST FAIL AS A MATTER OF LAW BECAUSE PLAINTIFFS HAVE NOT ESTABLISHED A CONSTITUTIONAL INJURY, NOR ANY DEFICIENCIES IN THE TRAINING AND SUPERVISION OF POLICE OFFICERS, ALL OF WHICH ARE NECESSARY TO ESTABLISH SECTION 1983 LIABILITY- COUNT III ...................... 21

    A.  LACK OF CONSTITUTIONAL INJURY .......................... 21

    B.  NO DEFICIENCY IN TRAINING ................................ 22

    C.  NO LIABILITY FOR FAILURE TO SUPERVISE ................... 24

V.  PLAINTIFFS' STATE LAW CLAIMS OF FALSE IMPRISONMENT AND BATTERY ARE BARRED BY THE ARREST PRIVILEGE - COUNTS VII AND VIII ....... 25

    A.  FALSE IMPRISONMENT ...................................... 25

    B.  BATTERY ................................................... 26

VI.  DETECTIVE LAWSON IS ENTITLED TO QUALIFIED IMMUNITY BECAUSE THE MISTAKEN ENTRY INTO PLAINTIFFS' HOME DOES NOT ESTABLISH AN ACTUAL VIOLATION OF A CLEARLY ESTABLISHED CONSTITUTIONAL RIGHT - COUNTS I TO VI .................................................... 27

    A.  NO ACTUAL VIOLATION OF A CONSTITUTIONAL RIGHT ......... 27

    B.  NO VIOLATION OF A CLEARLY ESTABLISHED RIGHT ............ 28

CONCLUSION ........................................................ 30

## TABLE OF CITATIONS
### Cases

*Albright v. Oliver*, 510 U.S. 266 (U.S. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

*Anderson v. Creighton*, 483 U.S. 635(1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

*Baker v. McCollan*, 443 U.S. 137 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12, 16, 18, 20

*Bresko v. John*, 2005 U.S. App. LEXIS 1338(3d Cir. Jan. 29, 2004) . . . . . . . . . . . . . . . . . . . . . . . .  13

*Brinegar v. United States*, 338 U.S. 160 (1949) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*Brzoska v. Olson*, 668 A.2d 1355 (Del. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

*Butz v. Economou*, 438 U.S. 478 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

*Canton v. Harris*, 489 U.S. 378 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

*County of Los Angeles v. Rettele*, ___ U.S. ___, 127 S.Ct. 1989 (2007) . . . . . . . . . . . . . . . .  7, 13, 14, 15

*Cummings v. City of Philadelphia*, 2005 U.S. App. LEXIS 13240 (3d Cir. Jun. 30, 2005) . . . . . . . . . .  11

*Daniels v. Delaware*, 120 F. Supp. 2d 411(D. Del. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

*Davidson v. Dixon*, 386 F.Supp. 482 (D.Del. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

*Donohue v. Gavin*, 280 F.3d 371 (3d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

*Franks v. Delaware*, 438 U.S. 154 (U.S. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Gooden v. Howard County*, 954 F.2d 960 (4th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

*Graham v. Connor*, 490 U.S. 386 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Groman v. Township of Manalapan*, 47 F.3d 628 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

*Harrison v. Christopher, et al.*, 2007 U.S. Dist. LEXIS (D. Del. May 25, 2007) . . . . . . . . . . . . . . . . .  17

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

*Herman v. City of Millville*, 2003 U.S. App. LEXIS 8549 (3d Cir. May 5, 2003) . . . . . . . . . . . . . *passim*

*Illinois v. Gates*, 462 U.S. 213 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12, 23, 28

*Keenan v. City of Philadelphia*, 983 F.2d 459 (3d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

i

*Lewis v. Foster*, 2006 U.S. Dist. LEXIS 45819 (D.Del 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Los Angeles County v. Rettele*, __ U.S. __, 127 S.Ct. 1989 (2007) . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 29

*Marable v. W. Pottsgrove Twp.*, 2006 U.S. App. LEXIS 9925 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . 21

*Maryland v. Garrison*, 480 U.S. 79 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 27

*Merkle v. Upper Dublin School District*, 211 F.3d 782 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Metcalf v. Long*, 615 F.Supp. 1108 (D. Del. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 29

*Meyers v. Wolkiewcz*, 2002 U.S. App. LEXIS 23409 (3d Cir. Oct. 30, 2002) . . . . . . . . . . . . . . . . . . . 10

*Michigan v. Summers*, 452 U.S. 692(1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Monell v. Department of Social Services*, 436 U.S. 658 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*Muehler v. Mena*, 544 U.S. 93 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 14, 25, 29

*Oakes v. K-Mart*, 1981 Del. Super. LEXIS 688 (Del. Super. Ct. 1981) . . . . . . . . . . . . . . . . . . . . . . . . 25

*Paff v. Kaltenbach*, 204 F.3d 425 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Saucier v. Katz*, 533 U.S. 194(2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Schneider v. Kessler*, 97 F.2d 542 (3d Cir. 1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Shaffer v. Davis*, 1990 Del. Super. LEXIS 217 (Del. Super. Ct. 1990) . . . . . . . . . . . . . . . . . . . . . . . . 19

*Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*Simmons v. City of Phila.*, 947 F.2d 1042 (3d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*United States v. Edwards*, 415 U.S. 800(1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Wilson v. Russo*, 212 F.3d 781(3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

**Constitutional Provisions**

U.S. Const., Amend. IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

U.S. Const., Amend. XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 16, 17, 20

**Federal Statutes**

28 U.S.C. § 1367 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

42 U.S.C. § 1983 ................................................................. *passim*

## State Statutes

11 Del. C. § 8601 ................................................................. 4

11 Del. C. § 8602 ................................................................. 4

11 Del. C. § 8603 ................................................................. 4

11 Del. C. § 8604 ................................................................. 4

11 Del. C. § 8605 ................................................................. 4

11 Del. C. § 8606 ................................................................. 4

11 Del. C. § 8607 ................................................................. 4

11 Del. C. § 8608 ................................................................. 4

11 Del. C. § 8609 ................................................................. 4

11 Del. C. § 8610 ................................................................. 4

## Other Sources

RESTATEMENT (Second) OF TORTS § 13 ............................................. 26

RESTATEMENT (Second) OF TORTS § 35 ............................................. 25

RESTATEMENT (Second) OF TORTS § 145 ........................................ 25, 26

## NATURE AND STAGE OF PROCEEDINGS

This is a Section 1983 action arising from the mistaken execution of a search warrant at Plaintiffs' residence. The Wilmington police mistook Plaintiffs' residence for the temporary hiding place of a first-degree murder suspect who had the same first and last name as Plaintiff DeWayne Walker. Plaintiffs allege that the mistaken entry into their home violated the Fourth Amendment, the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and the City's duty to train and/or supervise its police officers. Plaintiffs also assert pendant jurisdiction to allege battery and false imprisonment. Essentially, Plaintiffs' Complaint sets forth one allegation – the mistaken entry into their home – that is re-labeled as several constitutional violations and tort liabilities.

Plaintiffs sued the City of Wilmington, Detective Lawson, and "unknown entities." During discovery Defendants identified each individual officer who entered Plaintiffs' home, but Plaintiffs never substituted these individual officers in the caption and body of the Complaint. Accordingly, the City of Wilmington and Detective Michael Lawson are the only remaining defendants. This is the Opening Brief in support of summary judgment on their behalf.

1

## SUMMARY OF ARGUMENTS

I.     The Fourth Amendment claim (Counts I and IV) must fail because the police entry into Plaintiffs' home was authorized by a search warrant that is valid under the two-prong *Franks* test, and the execution of the search warrant was reasonable in duration and manner.

II.     The Fourteenth Amendment claims (Counts IV and VI) must fail because (1) Section 1983 claims arising from a search and arrest are only analyzed under the Fourth Amendment's reasonableness standard, not the Fourteenth Amendment's Due Process Clause, and (2) Plaintiffs have not proven any purposeful discrimination to establish a Section 1983 claim based on the Equal Protection Clause.

III.     The Section 1983 claim for negligence, false arrest, battery and civil rights (collectively Count II) must fail because state torts are not constitutional injuries for which Section 1983 provides a remedy.

IV.     The Section 1983 claim for failure to train/supervise (Count III) must fail because there has been no constitutional injury, no deficiency in the training of City police officers, and no deliberate indifference by supervisors or City policymakers toward Plaintiffs' constitutional rights.

V.     The state law claims for battery and false imprisonment (Counts VII and VIII) are barred by the privilege of arrest, which allows law enforcement officers to enter a home, detain its occupants, and use some degree of force when executing a valid search warrant.

VI.     Detective Lawson has qualified immunity for Plaintiffs' federal constitutional claims (Counts I through VI) because he acted with probable cause, which precludes an actual violation of a clearly established constitutional right.

2

## STATEMENT OF FACTS

On September 15, 2005, a team of Wilmington police officers mistakenly executed a search warrant at the residence of Plaintiff DeWayne Walker. The officers mistook Plaintiffs' residence for the possible temporary hiding place of a murder suspect, also named Dwayne Walker, who stabbed DeWayne Freeman to death thirty-six hours earlier ("the Freeman homicide"). (A1-2)[1]

1.     Investigation of the Freeman Homicide

On September 13, 2005, DeWayne Freeman was stabbed to death at Third and North Franklin Streets in Wilmington. (A1-2) The police interviewed several witnesses in the immediate area, none of whom gave any information. (A3, 9-10) Eventually, Freeman's girlfriend, Demia Jackson, reported that her daughter (Aaliyah Jackson) told her that she "heard Robyn knows who did it." (A11)

While police were at the crime scene, they located Robyn in the nearby area and took her to the police station for questioning. (A11 & Lawson A125) According to Robyn, she was at the intersection of Third and Connell Streets when she heard a black female, Tranika, who said: "My brother just stabbed Freeman, that's him lying on the ground." (A28) Robyn knew that Tranika is the sister of Dwayne Walker. (A28) Robyn also positively identified Walker in a photographic line-up. (A28)

Detectives also interviewed Shonda Wright, an eyewitness to the homicide. (A27) She too identified Walker through a photographic line-up. (A27 & Lawson A123) According to Wright, Walker stabbed Freeman in his chest with a pocket knife. (A27) Based on this information, the police applied for an arrest warrant for Dwayne Walker. (A36-38)

---

[1]The Appendix to this Opening Brief will be cited as "A_". Citations to any deposition transcripts will identify the deponent's last name and the corresponding page in the Appendix. The Appendix includes a deposition transcript for a confidential informant, whose identity will not be disclosed. The informant's testimony will be cited as "Informant A_."

2.    The Search for Dwayne Walker

Detective Lawson was the lead investigator for the Freeman homicide. He retrieved Dwayne Walker's criminal record from DELJIS (A52),[2] which showed an address of 703 West Fifth Street. (Lawson A126) A police officer went to that address, but the occupant stated that Dwayne Walker does not live there. (Lawson A126) Detectives also learned that Dwayne Walker's grandmother lived at 1103 West Fifth Street. (Lawson A126-27) The police did not find Dwayne Walker or his grandmother at that address. (Lawson A127) Detectives contacted Dwayne Walker's sister, Tranika, but she was uncooperative. (Lawson A127)

3.    The Tip from the Confidential Informant

On September 14, a confidential informant with information on the Freeman homicide contacted Detective Jeff Silvers. (Lawson A132-133; Silvers A186) This informant had witnessed the Freeman homicide because he was on the corner where Walker and Freeman were standing. (Informant A204-05) The informant told Detective Silvers that Walker was staying with the informant's sister-in-law (the informant's wife's sister has a daughter in common with Walker). (Informant A207) That same day, the informant brought Detective Silvers to his sister-in-law's house where he believed Walker was staying. (Informant A208) Because the police had no search warrant, they did not enter that house.

Later that day, the informant called Detective Silvers a second time, after learning that Walker was no longer staying with the informant's sister-in-law. (Informant A209-10, 213) The informant advised that "[Walker's] mother lives in Wilton, and if he wasn't at [the informant's] sister-in-law's house, that's probably mostly likely place he could be found." (Informant A210) According to the informant, "the first thing [Walker] would do was run to his mom, which he always done whenever he got in trouble." (Informant A224) The informant did not know the exact address for Walker's mother, but he did know that she lived behind the Wilton area. (Informant A220)

---

[2]DELJIS refers to the criminal justice information database used by law enforcement agencies. See 11 Del.C. §§ 8601-8610.

4

4.    Corroboration of the Confidential Informant's Tip

This particular informant assisted Detective Silvers with more than twenty criminal investigations over the past five years. (Silvers A183) Based on the informant's tip, Detective Silvers entered the name "Dwayne Walker" in DELJIS to determine if anyone with that name was residing in the Wilton area. (Silvers A188) This search yielded a larceny report for 118 Dutton Drive. (A45) The larceny report specifically listed the name Dwayne Walker (spelled exactly like the suspect's name), along with the name Karen Walker. (A45 & Silvers A188) The larceny report also stated that 118 Dutton Drive was in Wilton Park. (A45) Detective Silvers plotted the address on a map and further confirmed that it was located behind the Wilton area. (A45 & Silvers A189)

Detective Silvers was not assigned to the Freeman homicide, so he relayed this information to Detective Lawson. (Silvers A186)  Detective Lawson then verified public utility records for 118 Dutton Drive, which yielded the name DeWayne Walker. (Lawson A144 & A51, ¶10)

The vice squad surveyed 118 Dutton Drive and saw a dark Lexus parked outside. (Lawson A157) The license plate on the dark Lexus was registered to Karen Walker (the same name listed in the DELJIS larceny report). (A47) Based on this information, Detective Lawson believed that the "Dwayne Walker" in the larceny report could be the suspect in the Freeman homicide. (Lawson A151)

5.    The Search Warrant for 118 Dutton Drive

Detective Lawson applied for a warrant to search for Dwayne Walker at 118 Dutton Drive. (A50-51) Detective Lawson's probable cause affidavit relayed the confidential informant's tip that the suspect was staying with his mother who lived near Wilton. (A50, ¶8) The affidavit correctly relayed that the DELJIS larceny report for 118 Dutton Drive listed a "Dwayne Walker" (spelled exactly like the suspect's name). (A45 & 51, ¶9) The affidavit correctly noted that utility records for 118 Dutton Drive were listed in the name of DeWayne (misspelled as "Dwayne") Walker. The affidavit correctly stated that DELJIS records identify a DeWayne (misspelled as "Dwayne") Walker, Sr., with the home address of 118 Dutton Drive. (A51, ¶10)

5

Ultimately, a detached and neutral magistrate authorized the warrant to search for murder suspect Dwayne Walker at that address. (A36)

    6.    The Execution of the Search Warrant at 118 Dutton Drive

Because Dwayne Walker was wanted for first-degree murder, the SWAT team assisted Detective Lawson in executing the search warrant. The SWAT team entered the residence of 118 Dutton Drive, gathered the Walker family in the living room, and secured the entire premises. (Lawson A165-166) Detective Lawson then entered the house and immediately realized that Plaintiff DeWayne Walker was not the same Dwayne Walker in the Freeman homicide. (Lawson A154) Detective Lawson displayed the "Wanted" poster of the real Dwayne Walker. (A52) He explained that the search was simply a matter of mistaken identity, given the common first and last name. (Lawson A155-56) Detective Lawson apologized to the Walker family and gave his business card. He asked the Walkers to contact him if there was any damage to their home. The entire encounter lasted no more than twenty minutes. (Lawson A165)

Later that day, the murder suspect Dwayne Walker voluntarily surrendered to the police. (Lawson A146) Mr. and Mrs. Walker (Plaintiffs) went to work that day and DeWayne, Jr. went to school. (Walker, Jr. A231-232) Plaintiffs never did contact Detective Lawson. Instead, they filed this lawsuit, claiming that the mistaken execution of the search warrant was due to racism.

## ARGUMENT

I.  PLAINTIFFS' FOURTH AMENDMENT CLAIM MUST FAIL BECAUSE THE MISTAKEN ENTRY INTO PLAINTIFFS' HOME WAS AUTHORIZED BY A VALID SEARCH WARRANT, AND WAS EXECUTED IN A REASONABLE MANNER AND DURATION - COUNTS I & IV

Plaintiffs' Fourth Amendment rights were not violated because the mistaken entry into their residence was authorized by a valid search warrant, issued by a detached and neutral magistrate based on probable cause. The U.S. Supreme Court in *Graham v. O'Connor*, 490 U.S. 386, 396 (1989), held that "[t]he Fourth Amendment is not violated by an arrest based on probable cause, even though the wrong person is arrested, nor by the mistaken execution of a valid search warrant on the wrong premises." *See also County of Los Angeles v. Rettele*, ___ U.S. ___, 127 S.Ct. 1989 (2007)(upholding dismissal of a Fourth Amendment claim in which police officers executed a search warrant at the wrong address). While Defendants regret the error of entering Plaintiffs' house, the mistaken entry nonetheless complies with the Fourth Amendment for two reasons. First, the search was authorized by a warrant that is valid under the two-prong *Franks* test. *See Franks v. Delaware*, 438 U.S. 154 (U.S. 1978). Second, the search itself was reasonable in duration and manner, based on the *Graham* factors. *See Graham*, 490 U.S. at 395-96.

A.  The *Franks* Analysis: Valid Warrant Supported by Probable Cause

The entry into Plaintiffs' home complies with the Warrant Clause of the Fourth Amendment, which provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." As the U.S. Supreme Court explained in *Muehler v. Mena*, 544 U.S. 93, 97 (2005), "the presence of a warrant assures that a neutral magistrate has determined that probable cause exists to search the home." In this case, a magistrate found probable cause to believe that first degree murder suspect Dwayne Walker was hiding at 118 Dutton Drive.

Though the probable cause affidavit underlying the warrant includes two errors (a date of birth in Paragraph 9 and a misspelling of "DeWayne" in Paragraph 10), these two errors do not affect the validity of the search warrant. *Franks* is the seminal case on judicial review of a probable cause affidavit underlying a

7

search warrant. *Franks* sets forth a two-fold inquiry for determining whether to invalidate a search warrant due to misstatements contained in the underlying affidavit:

> (1) whether the affiant's misstatements amount to a deliberate falsehood or reckless disregard for the truth; and if so,
>
> (2) whether there remains sufficient content in the affidavit, despite its errors, to establish probable cause. *Id.* at 171-72.[3]

For the reasons stated below, the search warrant is valid under the two-prong *Franks* test, despite the two above-mentioned errors in Detective Lawson's affidavit.

### 1.    No Deliberate Falsehood or Reckless Disregard for the Truth

Detective Lawson's probable cause affidavit does not contain any deliberate falsehoods, nor did he recklessly disregard the truth. Though Detective Lawson's affidavit contains two errors, the misspelling of "DeWayne" in Paragraph 10 and the erroneous inclusion of a date of birth in Paragraph 9, these errors do not meet the *Franks* Court's definition of "untruthfulness". According to *Franks*, truthfulness of statements in a probable cause affidavit does not require "that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily." *Id.* at 165. The statements in the affidavit must only be "'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Id.*

Detective Lawson's affidavit meets the *Franks* standard of truthfulness, based on the following information:

> (1)    a confidential informant's tip that Dwayne Walker was staying behind Wilton (A50, ¶ 8);

---

[3]Though *Franks* was a criminal case arising from a challenge to the validity of a search warrant in a suppression hearing, the *Franks* analysis applies to Section 1983 actions as well. *See Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997)("A section 1983 plaintiff who challenges the validity of a search warrant by asserting that law enforcement agents submitted a false affidavit to the issuing judicial officer must satisfy the two-part test developed by the Supreme Court in *Franks v. Delaware*.")

(2)     a DELJIS larceny report for 118 Dutton Drive that identifies the address's proximity to Wilton and specifically lists a resident named "Dwayne Walker" (spelled exactly like the suspect's name) (A45 & A51,¶9); and

(3)     a Google Earth map confirming that 118 Dutton Drive is behind Wilton (A46).

Plaintiffs will emphasize that Paragraph 10 of Detective Lawson's affidavit identifies the name "Dwayne Walker" in the referenced DELJIS report, whereas the DELJIS report itself spells the name as "DeWayne Walker".[4] While this is indeed a misspelling, it is not a deliberate falsehood or reckless disregard for the truth under the *Franks* standard. To invalidate a warrant under the first prong of *Franks*, Plaintiffs must prove that, "viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *See Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000). Given that the suspect's name was spelled "Dwayne" and the victim's name was spelled "DeWayne", it is easy to see how Detective Lawson's affidavit confused two different spellings of the same name. Moreover, there was a separate DELJIS larceny report for 118 Dutton Drive that listed a "Dwayne Walker" (spelled exactly like the suspect's name). (A45) Again, it is easy to see how Detective Lawson's affidavit confused the two different spellings of "Dwayne", particularly when two separate DELJIS reports for 118 Dutton Drive spelled that name differently. As of September 14, 2005, Detective Lawson had no reason to doubt that his affidavit was referring to the correct Dwayne Walker.

The same is true of the erroneous insertion of the date of birth in Paragraph 9 of the affidavit. Admittedly, the DELJIS larceny report cited in Paragraph 9 contains no date of birth. Paragraph 9 of the affidavit mistakenly states that the DELJIS report lists a Dwayne Walker with a date of birth of 12/10/82.

---

[4]Detective Lawson's affidavit refers to two DELJIS reports for 118 Dutton Drive. Paragraph 9 refers to a DELJIS larceny report for 118 Dutton Drive, which lists the name "Dwayne Walker", and which is included at A45. Paragraph 10 refers to a DELJIS report on Dwayne (misspelled in the affidavit as "DeWayne") Walker, Sr., which is included at A49.

Although the insertion of a date of birth is an error, the DELJIS larceny report does indeed list a "Dwayne Walker" (first and last name spelled exactly like the suspect). (A45) Detective Lawson knew that a resident of 118 Dutton Drive named Karen Walker was born in 1962. (A47)   Detective Lawson also knew that his suspect was born in 1982 (and therefore, young enough to be the son of Karen Walker).  This could lead Detective Lawson to reasonably but erroneously conclude that the Dwayne Walker in the DELJIS larceny report was the murder suspect, Dwayne Walker, who was born in 1982.

The two above-cited errors in Detective Lawson's affidavit amount to innocent mistakes at best or negligence at worst.  However, these errors do not establish a deliberate falsehood or a reckless disregard for the truth that can invalidate a search warrant under the first prong of *Franks*.

2.    The Affidavit Contains Sufficient Content to Establish Probable Cause

Even if the above-cited errors amounted to deliberate falsehood or reckless disregard for the truth, a warrant is nonetheless valid under the second prong of *Franks* if "there remains sufficient content in the warrant affidavit to support a finding of probable cause[.]" *Id.* at 172.  This second prong of *Franks* requires the Court to "excise the offending inaccuracies and insert facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would assert probable cause." *See Wilson,* 212 F.3d at 789.

As an example, the Third Circuit in *Sherwood v. Mulvihill,* 113 F.3d 396, 399 (3d Cir. 1997), applied the second prong of *Franks* and found probable cause to search, despite two factual misrepresentations in the underlying warrant affidavit. *Id.* at 401. The *Sherwood* Court simply deleted the two misrepresentations and determined whether the affidavit (in its corrected form) would still establish probable cause. *Id.*  The *Sherwood* approach has been consistently applied in the Third Circuit to validate search warrants that contain immaterial misinformation in the underlying affidavit. *See Meyers v. Wolkiewcz,* 2002 U.S. App. LEXIS 23409 (3d Cir. Oct. 30, 2002)(validating a warrant that fails to disclose that an eyewitness could not identify the suspect); *Cummings v. City of Philadelphia,* 2005 U.S. App. LEXIS 13240 (3d Cir. Jun. 30, 2005)(validating a warrant in which the affiant/officer failed to disclose that his search of the crime scene

10

yielded no bullet casings). To apply the second prong of *Franks*, this Court must determine whether probable cause to search 118 Dutton Drive would still exist if (1) Paragraph 9 of Detective Lawson's affidavit did not contain a date of birth and (2) "Dwayne" had been spelled as "DeWayne" in Paragraph 10.

If the date of birth is deleted from Paragraph 9, the remainder of that paragraph correctly states that a DELJIS larceny report for 118 Dutton Drive lists a "Dwayne Walker". (A50, ¶9 & A45)  Combined with the informant's tip about Wilton, the DELJIS report cited in Paragraph 9 gives probable cause to believe that Dwayne Walker (the murder suspect) could be hiding at 118 Dutton Drive.

If Paragraph 10 is corrected to spell "DeWayne" as "Dwayne", it does not diminish the probable cause (as of September 14, 2005) to believe that first-degree murder suspect Dwayne Walker could be hiding at 118 Dutton Drive.  Paragraph 10 correctly states that a driver's license inquiry on DeWayne (misspelled as "Dwayne") Walker, Sr., lists an address of 118 Dutton Drive. (A51, ¶10)  Paragraph 10 correctly states that utility records show the utility account for 118 Dutton Drive is registered to DeWayne (misspelled as Dwayne) Walker, Sr. (A51, ¶10)

In assessing probable cause, Paragraphs 9 and 10 (in their corrected form) must be analyzed along with all facts stated in the underlying affidavit.  Applying the second prong of *Franks*, the remaining facts in Detective Lawson's affidavit were accurately stated, based on information known as of September 14.  First and foremost, a past proven reliable informant advised that the real Dwayne Walker was staying in his mother's house behind Wilton.  (Informant A224 & A50, ¶8)  This particular informant assisted the Wilmington police with more than twenty criminal investigations in the past five years. (Silvers A181-83)  Second, the informant's tip prompted detectives to search DELJIS records for any Walkers near the Wilton area. (Silvers A187-88)  That search led to a DELJIS larceny report for 118 Dutton Drive that listed a Dwayne Walker (first and last name spelled exactly like the suspect). (A45)  Third, a Google Earth map confirmed that 118 Dutton Drive is behind Wilton. (A46)  These facts establish probable cause to believe that first-degree murder suspect Dwayne Walker could be hiding at 118 Dutton Drive.

11

Hindsight reveals that the DELJIS larceny report cited in Paragraph 9 is not referring to the same Dwayne Walker (despite the exact same spelling of the first and last name). Hindsight reveals that the utility records cited in Paragraph 10 are not tied to the same Dwayne Walker. Hindsight reveals that Plaintiffs' and the suspect's common first and last names are purely coincidental. Plaintiffs' entire Fourth Amendment claim rests on hindsight. However, hindsight is not the standard by which to measure probable cause. *See Illinois v. Gates*, 462 U.S. 213, 237 (1983)("[A]fter-the-fact scrutiny by courts of the sufficiency of affidavits should not take the form of de novo review, [and] [a] magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'"). Instead, the *Gates* Court prescribed that probable cause should be assessed from "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* at 231 (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)). Applying this definition to the remaining facts stated in Detective Lawson's affidavit, there was probable cause as of September 14, 2005, to apply for and execute a search warrant for Dwayne Walker at 118 Dutton Drive.

A warrant does not become invalid simply because the police detained the wrong person, particularly when the mistaken arrestee has the same first and last name as the intended arrestee. *See Schneider v. Kessler*, 97 F.2d 542, 544 (3d Cir. 1938)("When an officer, pursuant to valid process, with due diligence arrests a man bearing the same name as the one mentioned in the process, honestly believing that he is arresting the person intended, he cannot be held liable in such an action as this even though he arrested the wrong man."). Given the similarities of the first and last name, the mistaken search at Plaintiffs' home was reasonable. *See Baker v. McCollan*, 443 U.S. 137, 146 (1979)("The Constitution does not guarantee that only the guilty will be arrested. If it did, [Section] 1983 would provide a cause of action for every defendant acquitted – indeed, for every suspect released.").

Plaintiffs' Fourth Amendment claim rests on two mistakes in Detective Lawson's affidavit, but the U.S. Supreme Court has emphasized "the need to allow some latitude for honest mistakes made by officers in the dangerous and difficult process of making arrests and executing search warrants." *See Maryland v.*

12

*Garrison*, 480 U.S. 79, 87 (1987); *see also Los Angeles County v. Rettele*, __ U.S. __, 127 S.Ct. 1989, 1993 (2007)("The Fourth Amendment allows warrants to issue on probable cause, a standard well short of absolute certainty."). While Detective Lawson could have conducted more surveillance or gathered more information before applying for and executing the search warrant, "probable cause does not require the officer to investigate every lead or that the officer obtain proof beyond a reasonable doubt." *See Herman v. City of Millville*, 2003 U.S. App. LEXIS 8549, *9 (3d Cir. May 5, 2003).

A Fourth Amendment violation does not turn on "whether the information on which police officers base their request for an arrest warrant resulted from a professionally executed investigation . . . [but turns on] whether probable cause existed." *See Bresko v. John*, 2005 U.S. App. LEXIS 1338, *6 (3d Cir. Jan. 29, 2004)(quotation omitted). Consequently, Detective Lawson's warrant affidavit, when construed in its corrected form and in its entirety, establishes probable cause to satisfy the second prong of *Franks*. Because the search warrant was valid under *Franks*, the entry into Plaintiffs' home complies with the Fourth Amendment.

      B.    The *Graham* Factors: Proper Execution of a Valid Warrant

Not only was the search authorized by a valid warrant, but the execution of the search itself was reasonable in duration and manner. Police officers are entitled to detain the occupants of a house for a brief period of time while conducting a search pursuant to a valid warrant. *See Michigan v. Summers*, 452 U.S. 692, 701 (1981); *see also Rettele*, __ U.S. __, 127 S.Ct. at 1992 ("In executing a search warrant officers may take reasonable action to secure the premises and to ensure their own safety and the efficacy of the search."). The U.S. Supreme Court in *Graham v. Connor*, 440 U.S. 386, 396 (1989), encouraged lower courts to give latitude to law enforcement officers in their execution of a warrant. Specifically, the *Graham* Court proposed the following three factors to guide a lower court's analysis: "(1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers and others; and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (enumerations added).

13

All three factors justified the manner in which the search warrant was executed at 118 Dutton Drive. First, the crime at issue was first-degree murder, which is the severest of all crimes. (A59) Second, the suspect posed a threat to the safety of the officers and others, given that he had stabbed someone to death thirty-six hours earlier. (A1-2) Third, the confidential informant advised that the suspect was planning to flee Delaware. (A50, ¶8) These three factors necessitated a prompt search of 118 Dutton Drive when there was probable cause to believe that a first-degree murder suspect was hiding there. The U.S. Supreme Court has confirmed that "it may well be appropriate to use both overwhelming force and surprise in order to secure the premises as promptly as possible [and] the decision to use a SWAT team of eight heavily armed officers and to execute the warrant at 7 a.m. [gives] the officers maximum protection against the anticipated risk." *Id.* at 108-109. The use of handcuffs is also necessary because the *Muehler* Court confirmed that "the need to detain multiple occupants [makes] the use of handcuffs all the more reasonable[.]"   *Id.* at 100.

As for the duration, the SWAT team cleared the entire four-bedroom single-family home and gathered all four occupants in the living room within the span of twenty minutes.  By that time, Detective Lawson realized his error, apologized for the mistake, explained to the Walkers how the mistake occurred, released the Walker family from custody, and left their home.  In fact, Mr. and Mrs. Walker still arrived at work on time that morning and DeWayne, Jr. arrived at school. (Walker, Jr. A131-32) The entire encounter lasted no more than twenty minutes (Lawson A165), which is well within the bounds of the Fourth Amendment. *See Rettele*, __ U.S. __, 127 S.Ct. at 1993  (upholding a fifteen minute detention); *Muehler v. Mena*, 544 U.S. at 100 (upholding a three-hour detention).

A proper application of the *Graham* factors strikes the necessary balance between citizens' interest in the privacy of their home and law enforcement officers' interests in securing weapons and capturing criminals. *See United States v. Edwards*, 415 U.S. 800, 808 (1974) ("While the legal arrest of a person should not destroy the privacy of his premises, it does – for at least a reasonable time and to a reasonable extent – take his own privacy out of the realm of protection from police interest in weapons, means of escape, and

14

evidence."). Consequently, Plaintiffs' Fourth Amendment claim fails because the mistaken entry into their home was authorized by a valid search warrant that satisfies the two-prong *Franks* test. The execution of this valid warrant was reasonable in duration and manner, based on the Fourth Amendment standards articulated in *Graham, Edwards*, *Muehler* and *Rettele*. For these reasons, Plaintiffs' Fourth Amendment claim cannot support Section 1983 liability.

II.  PLAINTIFFS' FOURTEENTH AMENDMENT CLAIMS MUST FAIL BECAUSE (A.) THE DUE
PROCESS CLAUSE DOES NOT APPLY TO SEARCH AND ARREST, AND (B.) THE EQUAL
PROTECTION CLAUSE DOES NOT APPLY UNLESS PLAINTIFFS CAN ESTABLISH
PURPOSEFUL DISCRIMINATION (WHICH THEY CANNOT) - COUNTS IV AND VI

Recognizing that they cannot rely on the Fourth Amendment to establish their Section 1983 claim,

Plaintiffs turn to the Fourteenth Amendment, separately alleging violations of the Due Process and Equal

Protection Clauses (Counts IV and VI). For the reasons below, neither Clause of the Fourteenth Amendment

can support Section 1983 liability in this case.

A.    The Due Process Clause

The Due Process Clause of the Fourteenth Amendment does not apply to claims arising from a search,

seizure or arrest conducted by the police. Rather, the *Graham* Court confirmed that "*all* claims that law

enforcement officers have used excessive force - deadly or not - in the course of an arrest, investigatory stop,

or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness"

standard, rather than under a 'substantive due process' approach." *Graham*, 490 U.S. at 394 (emphasis in

original). The Due Process Clause is limited to the reasonableness of pre-trial detentions. *See Albright v.*

*Oliver*, 510 U.S. 266, 273 (U.S. 1994)("Where a particular Amendment provides an explicit textual source

of constitutional protection against a particular sort of government behavior, that Amendment, not the more

generalized notion of 'substantive due process,' must be the guide for analyzing these claims."). The Fourth

Amendment is the explicit textual source of constitutional protection against searches, warrants, and arrests.

Defendants did not violate the Fourth Amendment because the entry into Plaintiffs' home was

supported by probable cause and authorized by a valid search warrant. Even if the Due Process Clause did

apply (notwithstanding the *Graham* and *Albright* Courts' pronouncements to the contrary), "[d]ue process

does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of

convicting an innocent person." *See Baker v. McCallan*, 443 U.S. 137, 145 (1979). Thus, Plaintiffs cannot

avoid summary judgment by re-labeling their Fourth Amendment claim as a substantive due process claim

under the Fourteenth Amendmen.

16

B.    The Equal Protection Clause

In the alternative, Plaintiffs attempt to construct a Fourteenth Amendment claim from the Equal Protection Clause. The equal protection claim would not establish Section 1983 liability in this case. According to *Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir. 1992), "to bring a successful equal protection claim under [Section] 1983, a plaintiff must prove the existence of purposeful discrimination, and demonstrate that he was treated differently from individuals similarly situated." *See also Harrison v. Christopher, et al.*, 2007 U.S. Dist. LEXIS (D. Del. May 25, 2007)(dismissing a race-based Section 1983 claim when the plaintiff presented no evidence of purposeful discrimination based on race). Thus, Plaintiffs must prove that Detective Lawson and the SWAT team deliberately executed a search warrant at what they knew to be the wrong address, and that they did so simply because Plaintiffs are African-American. Plaintiffs refuse to acknowledge that the search was the result of an error prompted by the common first and last name of the murder suspect Dwayne Walker. In their Interrogatory responses, Plaintiffs falsely state under oath that "race was the only commonality between the Walker family and the suspect." (A67) At the time of that response, Plaintiffs knew that the intended suspect was named Dwayne Walker, and therefore, race was not the only commonality. In light of *Harrison* and *Keenan*, the honest error in executing the search warrant does not establish purposeful discrimination for a Section 1983 claim under the Equal Protection Clause.

17

III.    **PLAINTIFFS' SECTION 1983 CLAIM DERIVED FROM STATE TORT LAW MUST FAIL BECAUSE SECTION 1983 IS LIMITED TO VIOLATIONS OF FEDERAL CONSTITUTIONAL RIGHTS - COUNT II**

Recognizing that there is no federal constitutional basis for Plaintiffs' Section 1983 claim, Count II of the Complaint erroneously relies on state tort law as an independent basis for Section 1983 liability. Count II alleges that Defendants are liable under Section 1983 for (1) negligence, (2) battery, (3) false arrest, and (4) generic civil rights violations.[5] For the reasons below, none of these four causes of action is a basis for Section 1983 liability.

A.    Negligence

The U.S. Supreme Court in *Baker v. McCollan*, 443 U.S. 137, 146 (1979), recognized that "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." The negligence claim in Count II alleges "acts and/or omission of Defendant City . . . which demonstrated the complete disregard by Defendant City of a risk known or which should have been known and a deliberate indifference to the constitutional rights and welfare of Plaintiffs and others." This is a generic claim of negligence under state tort law; it is not a federal constitutional claim under Section 1983. *See Metcalf v. Long*, 615 F.Supp. 1108, 1121 (D. Del. 1985)("Not all torts of state officials violate the Constitution or laws of the United States and thus are not always actionable under section 1983."). The *Baker* Court further explained that "[r]emedy for [tort] injury must be sought in state court under traditional tort law principles." *Baker*, 443 U.S. at 146. In light of *Baker* and *Metcalf*, negligence cannot support a Section 1983 claim for Count II of Plaintiffs' Complaint.

---

[5]Count II appears to be a catch-all claim that re-labels four causes of action stated in other Counts of the Complaint. Count III already alleges negligent training and supervision, which is addressed in Section IV of this Opening Brief. Count VIII already alleges battery, which is addressed in Section V.B of this Opening Brief. Count VII already alleges false imprisonment, which is addressed in Section V.A of this Opening Brief. False arrest is merely another label for a Fourth amendment violation (as already alleged in Counts I and IV), which is addressed in Section I of this Opening Brief. See *infra* note 7 (explaining the difference between false arrest and false imprisonment).

18

B.    Battery[6]

The same is true of the Section 1983 claim for battery in Count II. This Court has held that mere assault and battery are not constitutional violations to support Section 1983 liability. *See Davidson v. Dixon*, 386 F.Supp. 482, 486 (D.Del. 1973). Count VIII asserts pendant jurisdiction for a battery claim under state tort law, which is separately addressed in Section V of this Opening Brief. It appears that the battery claim in Count II is a redundant fallback position if the battery claim in Count VIII fails. Based on *Davidson*, Plaintiffs cannot avoid dismissal of the state law battery claim by re-labeling it in Count II as a federal constitutional claim.

C.    False Arrest

The allegation of false arrest in Count II is yet another redundancy. A constitutional claim for false arrest under Section 1983 is simply a Fourth Amendment claim (which is already alleged in Counts I and IV). *See Herman v. Milville,* 2003 U.S. App. LEXIS 8549, *6 n.3 (3d Cir. May 5, 2003). The Fourth Amendment governs the constitutionality of a search and arrest. For reasons set forth in Section I above, Plaintiffs' Fourth Amendment claim fails because the police had probable cause and a valid search warrant. Plaintiffs cannot avoid dismissal of their Fourth Amendment claim in Count I by re-labeling it in Count II as a constitutional claim of false arrest.[7]

---

[6]Count VII separately alleges one count of battery arising from state tort law. Because that Count is brought pursuant to this Court's supplemental jurisdiction, 28 U.S.C. § 1367, Section V.B of this Opening Brief will separately address that Count. Section II of this Opening Brief is limited to Plaintiffs' claim that Section 1983 itself creates an independent federal cause of action for battery.

[7]Delaware law distinguishes between false arrest and false imprisonment. *See Shafer v. Davis*, 1990 Del.Super. LEXIS 217 (Del.Super.Ct. 1990). A false arrest is an unlawful arrest, whereas a false imprisonment is the unlawful detention of one person by another. *Id.* Plaintiffs' false imprisonment claim is separately alleged in Count VII, and therefore, will be separately addressed in Section V.A of this Opening Brief. Even if Count II alleged false arrest instead of false imprisonment, Count II still would not state a separate cause of action from the Fourth Amendment claim in Counts I and IV. *See Groman v. Township of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995)("A false imprisonment claim under § 1983 which is based on an arrest made without probable cause is grounded in the Fourth Amendment's guarantee against unreasonable seizures.").

D.    Civil Rights

Yet another redundancy in Count II is the Section 1983 claim for a violation of unspecified civil rights.  The *Baker* Court succinctly explained that Section 1983 "is not itself a source of substantive rights, [but merely] a method of vindicating federal rights conferred elsewhere." *See Baker*, 443 U.S. at 144 n.3. Counts I and IV already allege violations of federal rights conferred by the Fourth Amendment.  Counts IV and VI already allege violations of the federal rights conferred by the Fourteenth Amendment.  Those Counts are separately addressed in this Opening Brief at Sections I and II, respectively.  Count II does not cite any other violations of rights conferred by the federal Constitution.  Therefore, in light of *Baker*, Plaintiffs' generic allegation of a civil rights violation in Count II is not itself a basis for Section 1983 liability. Consequently, Count II fails to state any basis whatsoever for a Section 1983 claim.

IV.    PLAINTIFFS' CLAIM OF NEGLIGENT TRAINING/SUPERVISION MUST FAIL AS A MATTER
       OF LAW BECAUSE PLAINTIFFS HAVE NOT ESTABLISHED A CONSTITUTIONAL INJURY,
       NOR ANY DEFICIENCIES IN THE TRAINING AND SUPERVISION OF POLICE OFFICERS,
       ALL OF WHICH ARE NECESSARY TO ESTABLISH SECTION 1983 LIABILITY- COUNT III

       Plaintiffs' Section 1983 claim for failure to train/supervise must fail for three reasons. First and

foremost, Plaintiffs have failed to establish a constitutional injury, given that the erroneous entry into their

home did not violate the Fourth Amendment. Second, Plaintiffs have not identified any deficiency in the

training of City police officers. Third, Plaintiffs have not established that any City policymaker or supervisor

acted with deliberate indifference to Plaintiffs' constitutional rights.

       A.    Lack of Constitutional Injury

       Defendants cannot be liable for failure to train or supervise unless Plaintiffs establish a constitutional

injury. *See Marable v. W. Pottsgrove Twp.*, 2006 U.S. App. LEXIS 9925, *24 (3d Cir. 2006)("A municipality

may not incur *Monell* liability as a result of the actions of its officers when its officers have inflicted no

constitutional injury."). The erroneous search and detention at Plaintiffs' home does not establish a

constitutional injury, because the search was authorized by a valid warrant supported by probable cause (see

Section I above). Probable cause defeats the requisite constitutional injury for failure to train/supervise under

Section 1983. *See Herman v. City of Millville*, 2003 U.S. App. LEXIS 8549, *5 (3d Cir. May 5, 2003).

       In *Herman*, the plaintiff/arrestee alleged that her arrest was due to the police defendants' incomplete

investigation of the facts leading to her arrest. *Id.* at *2. As in this case, the *Herman* plaintiff alleged

violations of the Fourth Amendment, false arrest, false imprisonment, and negligent training and/or

supervision by the City of Millville and its police department. *Id.* at *4-5. The Third Circuit affirmed

summary judgment on these claims because the police officers had probable cause to arrest. *Id.* at *5 ("The

central issue here is whether the officers had probable cause to arrest Herman, since probable cause is a

complete defense to each and every claim.").

       The *Herman* Court defined probable cause as "facts and circumstances within [the officers']

knowledge and of which they had reasonably trustworthy information [which] were sufficient to warrant a

21

prudent man in believing that the [suspect] had committed or was committing an offense." *Id.* (quotation omitted)(first alteration in original). Applying *Herman* to this case, the following facts and circumstances gave Detective Lawson probable cause to believe that Dwayne Walker (the murder suspect) was hiding at 118 Dutton Drive. A reliable informant provided reasonably trustworthy information that the real Dwayne Walker was likely hiding at his mother's house in the Wilton area. (Informant A209) Plaintiffs' address of 118 Dutton Drive is located behind the Wilton area. (A46) A DELJIS larceny report for 118 Dutton Drive lists a resident named "Dwayne Walker" (spelled exactly like the suspect's name). (A45)

Plaintiffs will inevitably argue that the police could have conducted a more thorough investigation to discern the correct Dwayne Walker. However, the *Herman* Court confirmed that "probable cause does not require the officer to investigate every lead or that the officer obtain proof beyond a reasonable doubt." *Id.* at *9. *See also Merkle v. Upper Public Sch. Dist.,* 211 F.3d 782, 790 n. 8 (3d Cir. 2000)(recognizing that a police officer "was not required to undertake an exhaustive investigation in order to validate the probable cause tha , in his mind, already existed."). Because Detective Lawson acted with probable cause, the *Herman* decision confirms that the mistaken entry into Plaintiffs' home is not the requisite constitutional injury for the failure to train/supervise claim. *Herman,* 2003 US. App. LEXIS 8549, *6 n.3 ("[T]he City and the Police Department did not negligently supervise [its police officers] if they acted on probable cause."). Without a constitutional injury, the City cannot be liable for failure to train or supervise.

B.    No Deficiency in Training

Even if Plaintiffs could establish a constitutional injury (which they cannot), the U.S. Supreme Court in *Monell v. Department of Social Services,* 436 U.S. 658 (1978), held that "a municipality can only be liable under Section 1983 when the execution of a municipality's policy or custom, whether made by its lawmakers or those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the municipality may be held responsible under § 1983." *Id.* at 694-95  A municipality cannot be held liable under Section 1983 by respondeat superior theory. *Id.* at 691. The seminal case applying *Monell* to claims

22

of failure to train/supervise is *Canton v. Harris*, 489 U.S. 378 (1989), which held that "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality – a 'policy' as defined by our prior cases – can a city be liable for such a failure under § 1983." *Id.* at 391.

The Wilmington police department's official policy for search warrant affidavits is set forth at White Book Directive 6.11(D)(6):

> The Delaware Supreme Court has mandated that an affidavit of probable cause be submitted in all arrest or warrant situations. The affidavit must contain information to establish that a crime was committed, and how the named suspect was identified as the alleged perpetrator of the crime. (A93-109)

This policy, as stated and as applied, is consistent with the U.S. Supreme Court's definition of probable cause: "In dealing with probable cause,... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *See Illinois v. Gates*, 462 U.S. 213, 232 (1983). Because Directive 6.11(D)(6) is consistent with that definition of probable cause, there is no training deficiency with regard to Detective Lawson's application for (and execution of) the search warrant.

In compliance with Directive 6.11, Detective Lawson's warrant affidavit described how Dwayne Walker was identified as a criminal suspect. (A50, ¶¶1-8) Detective Lawson's affidavit correctly stated that "on 9-14-05, a past proven reliable informant contacted Detective Silvers of the Wilmington Police Drug Unit with information as to the whereabouts of suspect, Dwayne Walker. The informant stated Walker is currently hiding at his mother's house in New Castle and is making plans to flee Delaware." (A50, ¶8)

As for probable cause to believe that Dwayne Walker was hiding at 118 Dutton Drive, Detective Lawson correctly relied on (1) an informant's tip that Dwayne Walker was staying at a house behind Wilton (Informant A210), (2) a DELJIS larceny report for 118 Dutton Drive that lists a resident named Dwayne Walker (spelled exactly like the suspect's name) (A45), and (3) a Google Earth map confirming that 118 Dutton Drive is behind Wilton. (A46)

Even if Detective Lawson's search and investigation did not comply with Directive 6.11, the *Canton*

23

Court cautioned that "a city [would not] automatically be liable under § 1983 if one of its employees happened to apply the policy in an unconstitutional manner." *See also Simmons v. City of Phila.*, 947 F.2d 1042, 1060 (3d Cir. 1991)("[a] mere showing that a particular officer violated policy, or that better training would have enabled the officer to avoid the injury-causing conduct, is insufficient to establish a municipality's liability under § 1983 for failure to train."). Thus, even if Defective Lawson's investigation is deemed constitutionally deficient (or insufficient), that cannot be a basis for the City's liability for failure to train.

C.      No Liability for Failure to Supervise

As with failure to train, a claim for failure to supervise requires a Section 1983 plaintiff to " identify with particularity what the supervisory officials failed to do that demonstrates deliberate indifference, and demonstrate a close causal link between the alleged failure and the alleged injury." *See Daniels v. Delaware*, 120 F. Supp. 2d 411, 423 (D. Del. 2000). For the reasons below, Plaintiffs have failed to establish deliberate indifference of City supervisors, let alone a causal link to a constitutional injury.

Though Detective Lawson was assigned to investigate the Freeman homicide, he was not a supervisor. His supervisors were Sergeants Donovan and Wyatt. (Lawson A167) Defendants identified these supervisors in the Rule 26 disclosures (A60-63), and Detective Lawson confirmed in his deposition that these sergeants were his supervisors. (Lawson A167)   Plaintiffs' did not amend their pleadings to include these sergeants as co-defendants. Therefore, Detective Lawson's supervisors cannot be liable for failure to supervise.

Even if these supervisors had been named as co-defendants, they cannot be liable for negligent supervision of Detective Lawson if he acted with probable cause. *See Herman*, 2003 U.S App. LEXIS 8549, *6 n.3 (3d Cir. May 5, 2003) ("[T]he City and the Police Department did not negligently supervise [its police officers] if they acted on probable cause."). Probable cause precludes Plaintiffs from establishing a constitutional injury, which is an indispensable requisite for Section 1983 liability. Based on *Daniels* and *Herman*, neither Detective Lawson's supervisors nor the City itself can be liable for failure to supervise if there has been no constitutional injury.

V.     PLAINTIFFS' STATE LAW CLAIMS OF FALSE IMPRISONMENT AND BATTERY ARE
       BARRED BY THE ARREST PRIVILEGE - COUNTS VII AND VIII

Plaintiffs' pendant state law claims of false imprisonment and battery are barred by the affirmative

defense of arrest privilege, which allows law enforcement officers to detain citizens when executing a valid

search warrant.   This privilege also allows law enforcement officers to use some degree of force when

executing the warrant.

       A.     False Imprisonment

Because Plaintiffs were detained by law enforcement officers, the affirmative defense of arrest

privilege applies.   Delaware tort law defines false imprisonment as "the *unlawful* restraint by one person of

the physical liberty of another." *See Oakes v. K-Mart*, 1981 Del. Super. LEXIS 688, *5-6 (Del. Super. Ct.

1981)(quotation omitted).   A restraint of another's physical liberty is lawful when it is privileged.   *See*

RESTATEMENT (Second) OF TORTS § 35.   A privilege exists "where the confinement was by arrest under

a valid process issued by a court having jurisdiction.'"   *Id.* at § 35, cmt. (a).   The arrest privilege is further

defined in RESTATEMENT (Second) OF TORTS § 145 (emphasis added):

> One serving a process or executing an order of a court or other public authority is *privileged*,
> if such process or order is valid or fair on its face, to use such force against the person of
> another or *to impose such confinement upon him* as is authorized by the order or is
> reasonably necessary for the service of the process or the execution of the order.

The restraint of Plaintiffs was lawful (albeit in error) because it was authorized by a valid search warrant.

A detached and neutral magistrate authorized a warrant to search for Dwayne Walker at 118 Dutton

Drive.   That warrant was valid based on the two-prong *Franks* test described more fully in Section I above.

Because there was a valid search warrant for 118 Dutton Drive, Detective Lawson and the SWAT team were

privileged to enter that residence and detain the Walker family until confirming whether first-degree murder

suspect Dwayne Walker was hiding in their house. The use of handcuffs was justified because there were

multiple occupants in the house. *See Muehler*, 544 U.S. at 100 ("[T]he need to detain multiple occupants

[makes] the use of handcuffs all the more reasonable[.]"). Consequently, Defendants' execution of a valid

25

search warrant establishes the arrest privilege, which is a complete defense to false imprisonment, even though Plaintiffs were handcuffed and detained by mistake.

      B.    <u>Battery</u>

As for any claim of battery, Detective Lawson cannot be liable because he did not have any physical contact with Plaintiffs. Delaware courts have adopted the definition of battery that is set forth in RESTATEMENT (Second) OF TORTS § 13: "to cause a harmful or offensive contact with the person of the other [and] a harmful contact with the person of the other directly or indirectly results." *See Lewis v. Foster*, 2006 U.S. Dist. LEXIS 45819, *26 (D.Del 2006)(confirming that Delaware follows the RESTATEMENT definition of battery). Detective Lawson did not even enter Plaintiffs' house until after the SWAT team gathered the Walker family in the living room. (Lawson A165) Therefore, he cannot be liable for battery if he had no physical contact with Plaintiffs.

As for officers who did have physical contact with the Walker family, their liability for false imprisonment is also barred by the arrest privilege. As an intentional tort, battery is subject to the defense of arrest privilege. *See Brzoska v. Olson*, 668 A.2d 1355, 1361 (Del. 1995)(applying the affirmative defense of arrest privilege). In this case, the police officers' contact with the Walker family occurred during the course of the lawful execution of a valid search warrant. Law enforcement officers are permitted to use some degree of force when executing a search warrant. *See* RESTATEMENT (Second) OF TORTS § 145, cmt. (a).

According to the individual police reports, Matthew Hall handcuffed DeWayne Walker, Sr. (A74), William Gearhart detained DeWayne, Jr. (A78), and Bruce Coffiey detained Mrs. Walker. (A79) Defendants' Rule 26 disclosures identified these three officers, along with their individual reports confirming that they detained each respective Plaintiff. (A70-92) Plaintiffs never amended the pleadings to name those individuals as co-defendants. Therefore, Plaintiffs have effectively waived any claims against those three officers, notwithstanding the arrest privilege that would bar their liability.

VI.  DETECTIVE LAWSON IS ENTITLED TO QUALIFIED IMMUNITY BECAUSE THE MISTAKEN ENTRY INTO PLAINTIFFS' HOME DOES NOT ESTABLISH AN ACTUAL VIOLATION OF A CLEARLY ESTABLISHED CONSTITUTIONAL RIGHT - COUNTS I TO VI

Detective Lawson is entitled to qualified immunity for the mistaken execution of the search warrant because Plaintiffs' have not established an actual violation of a clearly established constitutional right. The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). According to *Saucier v. Katz*, 533 U.S. 194, 201 (2001), the analysis of qualified immunity is two-fold:

(A.) whether Plaintiffs have identified a violation of an actual constitutional right, and if so,

(B.) whether that right is clearly established.

When a government official asserts a qualified immunity defense, the plaintiff bears the initial burden of demonstrating a violation of a clearly established constitutional right. *See Donohue v. Gavin*, 280 F.3d 371, 378 (3d Cir. 2002). For the reasons below, Plaintiffs have failed to meet that burden.

A.  No Actual Violation of a Constitutional Right

The constitutional right at issue is the Fourth Amendment's guarantee against unreasonable search and seizure. As such, Plaintiffs' constitutional claim must be analyzed under the "reasonableness" standard of the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 394 (1989). In order to prevail, Plaintiffs must demonstrate that the search of 118 Dutton Drive was not "objectively reasonable." *Id.* at 397. This search was objectively reasonable because Detective Lawson had probable cause to believe that a first-degree murder suspect was hiding in Plaintiffs' home (see Section I above). Though hindsight reveals that Detective Lawson was mistaken in his belief, qualified immunity applies to mistakes of fact as well as mistakes of law. *See Butz v. Economou*, 438 U.S. 478, 507 (1978). More specifically, the U.S. Supreme Court in *Maryland v. Garrison*, 480 U.S. 79 (1987), recognized that qualified immunity applies to police officers' mistaken

27

search of the wrong house. *See also Gooden v. Howard County*, 954 F.2d 960, 967 (4th Cir. 1992)("If every mistaken seizure were to subject police officers to personal liability under § 1983, those same officers would come to realize that the safe and cautious course was always to take no action."). Hence, Detective Lawson's mistake does not vitiate his probable cause, as of September 14, 2005, to apply for (and execute) a search warrant for 118 Dutton Drive.

There can be no actual violation of the Fourth Amendment when a search of the home is based on probable cause, particularly when the search is authorized by a valid warrant. Nor can a Fourth Amendment violation be established from the two errors in Detective Lawson's warrant affidavit, given the two-prong *Franks* analysis set forth in Section I above. Without a Fourth Amendment violation, Plaintiffs have suffered no actual violation of a constitutional right that can overcome Detective Lawson's qualified immunity.

B.    No Violation of a Clearly Established Right

Even if the Court concludes there was a violation of the Fourth Amendment, the Court must next address the second prong of the qualified immunity analysis — whether the constitutional right at issue was clearly established. *Id.* A right is "'clearly established' when the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987). This inquiry turns on "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *See Saucier*, 533 U.S. at 202. As explained in *Graham*, "[t]he Fourth Amendment is not violated by an arrest based on probable cause, even though the wrong person is arrested, nor by the mistaken execution of a valid search warrant on the wrong premises." *See Graham*, 490 U.S. at 396.

Based on *Graham* and *Garrison*, there is no clearly established right to be free from a mistaken arrest or a mistaken execution of a valid search warrant at the wrong house. Plaintiffs can only overcome *Graham* and *Garrison* by showing that Detective Lawson lacked probable cause at the time he applied for the warrant. As defined in *Illinois v. Gates*, 462 U.S. 213, 246 (1991), "probable cause requires only a probability or

substantial chance of criminal activity, not an actual showing of such activity." While Plaintiffs will argue that Detective Lawson should have conducted a more thorough investigation before seeking a warrant, the Third Circuit observed that "probable cause does not require the officer to investigate every lead or that the officer obtain proof beyond a reasonable doubt." *See Herman*, 2003 U.S.App. LEXIS 8593, at *9. Instead, probable cause has been defined as " a fluid concept – turning on the assessment of probabilities in a particular factual context – not readily, or even usually, reduced to a neat set of legal rules." *Paff v. Kaltenbach*, 204 F.3d 425, 436 (3d Cir. 2000)(quotation omitted*)*.

Based on the above-cited definitions, Detective Lawson had probable cause (as of September 14, 2005) to believe that a murder suspect named Dwayne Walker was hiding at 118 Dutton Drive. Detective Lawson's search warrant itself is valid, despite its errors, because it meets the two-prong *Franks* test described more fully in Section I above.

As for Plaintiffs' brief detention during the execution of the warrant, the right to make a lawful arrest includes the right to use some degree of physical force (including handcuffs) to effectuate the arrest. *See Graham*, 490 U.S. at 396;*Los Angeles v. Rettele*, __ U.S.__, 127 S.Ct. 1989 (2007)(upholding a mistaken execution of a search warrant in which the police officer forced a naked occupant of the house to dress in front of the officers); *Muehler,* 544 U.S. at 100 ("[T]he need to detain multiple occupants [makes] the use of handcuffs all the more reasonable[.]" ); *Metcalf v. Long*, 615 F.Supp. 1108, 1121 (D. Del. 1985)(holding that mere assault and battery do not rise to the level of a constitutional violation).

The show of force utilized during the execution of this search warrant was within the permissible boundaries of the Fourth Amendment, as defined by *Graham, Mena, Rettele,* and *Metcalf.* Consequently, a mistaken execution of a valid search warrant (with or without an attendant show of force) does not violate any clearly established right under the Fourth Amendment. Because there has been no violation of a clearly established right, Detective Lawson is entitled to qualified immunity.

29

## CONCLUSION

For the reasons set forth above, Defendants, the City of Wilmington and Detective Michael R. Lawson, Jr., respectfully move this Honorable Court to grant its Motion for Summary Judgment on all counts of the Complaint.

 /s/ Alex J. Mili, Jr.

Alex J. Mili, Jr., Esquire (I.D. #4125)
Senior Assistant City Solicitor
Louis L. Redding City/County Building
800 N. French Street, 9th Floor
Wilmington, DE 19801
(302) 576-2175
Attorney for Defendants City of Wilmington and
Detective Michael R. Lawson, Jr.

DATE: June 22, 2007

30