IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DeWAYNE WALKER, SR., KAREN     :
WALKER, his wife, <u>D.W. Jr.</u>, minor child   :
and <u>T. W.</u>, minor child,                :
                               :
        Plaintiffs,              :
                               :
     v.                         :      C.A. NO.  06-288 ***
                               :
THE CITY OF WILMINGTON, a political : 
subdivision of the State of Delaware,     :      <u>Jury Trial Demanded</u>
DETECTIVE MICHAEL R. LAWSON, JR.,:
individually and in his official capacity,  and :
UNKNOWN ENTITIES,           :
                               :
        Defendants.

<u>PLAINTFFS' ANSWERING BRIEF IN OPPOSITION
TO DEFENDANTS'  MOTION FOR SUMMARY JUDGMENT</u>

BIGGS AND BATTAGLIA
<u>/s/ Victor F. Battaglia</u>
<u>/s/ Philip B. Bartoshesky</u>
Victor F. Battaglia, Sr.(ID# 156)
Philip B. Bartoshesky (ID# 2056)
921 Orange Street
Wilmington, DE 19801
(302) 655-9677
<u>VictorSr@batlaw.com</u>
Pbarto@batlaw.com
Attorneys for Plaintiffs

Date:  July 12, 2007

## TABLE OF CONTENTS

I. NATURE AND STAGE OF PROCEEDINGS ..........................................................................1

II. SUMMARY OF ARGUMENT....................................................................................................2

III. STATEMENT OF FACTS........................................................................................................5

IV. ARGUMENT..............................................................................................................................14

    A.  THE INVASION OF THE PLAINTIFFS' HOME AND THE PHYSICAL RESTRAINT AND BATTERY OF PLAINTIFFS VIOLATED THEIR RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION......................................................................................................................14

    B.  THERE ARE ISSUES OF FACT PRECLUDING SUMMARY JUDGMENT ON THE LIABILITY OF THE CITY OF WILMINGTON FOR THE VIOLATION OF PLAINTIFFS' CONSTITUTIONAL RIGHTS ......................................................................24

    C.  THE CLAIMS AGAINST DEFENDANT LAWSON SHOULD NOT BE DISMISSED ON THE BASIS OF QUALIFIED IMMUNITY.....................................................27

    D.  PLAINTIFFS' STATE LAW CLAIMS OF FALSE IMPRISONMENT AND BATTERY ARE NOT BARRED ............................................................................................29

V.  CONCLUSION ..........................................................................................................................30

## TABLE OF CASES

*Abraham v. Raso*, 183 F.3d 279, 290 (3d Cir. 1999) ............................................21

*City of Canton v. Harris*, 489 US 378 (1989)........................................................25

*County of Los Angeles v. Rettele*, ____ US ____ 127 S.Ct. 1989 (2007) ..................28

*Couden v. Duffy*, 446 F.3d. 483 (3d. Cir. 2006) ..........................................21, 27, 28

*Curley v. Klem*, 298 F.3d 271 (3d Cir. 2002) ................................................15, 27

*Doe v. Groody*, 361 F.3d 232, 243 (3d. Cir. 2004) ...............................................27

*Franks v. Delaware*, 438 U.S. 154 (1978) .........................................................17

*Graham v. Connor*, 490 U.S. 386 (1989) .........................................................21

*Hudson v. Michigan*, 126 S.Ct. 2159 (2006) ...............................................22, 23

*Johnson v. United States*, 333 U.S. 10, 13-14, 68 S. Ct. 367, 92 L.Ed. 436 (1948)..........16

*Kornegay v. Cottingham*, 120 F.3d 392 (3d Cir. 1997) ..................................15, 22, 23

*Malley v. Briggs*, 475 US 335 (1986).............................................................27

*Monell v. Department of Social Services*, 436 US 658 (1978) ...................................25

*Myers v. Medical Center of Delaware, Inc.*, 86 F. Supp. 2d 389, 393 (D. Del. 2000) ....15, 16, 27, 28

*Paff v. Kaltembach*, 204 F.3d. 625 (3d. Cir. 2000) .........................................28, 29

*Payton v. New York*, 445 U.S. 573, 585 (1980) ..................................................16

*Payton v. New York*, 445 U.S. 573, 586 n.24, 100, S. Ct. 1371, 630 L.Ed.2d 639 (1980) ..............16

*Richards v. Wisconsin*, 520 U.S. 385 (1997).....................................................22

*Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997) ..............................15, 17, 19

*Silverman v. United States*, 365 U.S. 505, 511 (1961) .........................................16

*Spring v. Gallegos*, 26 F.3d 392 (3d Cir. 1997).................................................15

*T.V. Spano Building Corporation v. Wilson*, 584 A.2d. 523 (Del. Super. 1990) ................30

*United States v. United States District Court*, 407 U.S. 297, 313 (1972).......................16

*United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006) .......................................19

*Watkins v. New Castle County*, 374 F. Supp. 3d 379 (D. Del. 2005)..................21, 25, 27

*Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000) .............................................16

## TABLE OF AUTHORITIES

3 Am.Jur.2d. Agency § 264............................................................................30

Am.Jur.2d. Assault & Battery § 106..................................................................30

10 Del. C. § 4010 .....................................................................................30

10 Del. C. § 4011(c) ...................................................................................1

10 Del. C. § 8124 ...............................................................................8, 22, 26

11 Del. C. § 1911 and 1941, et. seq. ...................................................................23

11 Del. C. § 2308 ...........................................................................2, 3, 15, 17, 25, 27, 29

42 U.S.C. § 1983.......................................................................................14

Federal Rule of Civil Procedure 56 ..................................................................30

Restatement of Agency 2d. § 343 .....................................................................30

## I. NATURE AND STAGE OF THE PROCEEDINGS

On September 15, 2005, a twenty-man City of Wilmington (hereinafter "City") SWAT Team raided the home of Plaintiffs DeWayne and Karen Walker at 118 Dutton Drive in New Castle, Delaware. The SWAT Team was acting outside of its jurisdiction and pursuant to a search warrant obtained through a false affidavit of probable cause. They were purportedly looking for evidence that Dwayne A. Walker (DAW) had killed Dewayne Freeman in Wilmington on September 13. There was no evidence DAW had ever been to 118 Dutton Drive, or was in any way associated with DeWayne or Karen Walker. Defendants now claim the raid was a simple mistake. Plaintiffs, on behalf of themselves and their two minor children, have filed suit alleging, *inter alia*, the raid violated their constitutional rights.

Only one of the officers involved in the raid, Defendant Michael Lawson (Lawson), the lead Detective on the Freeman case, identified himself to the Walkers. Therefore, Plaintiff's counsel sent notice to the Mayor of Wilmington pursuant to 10 <u>Del. C.</u> § 8124 that a claim for damages would be brought against the City. Also, on or about September 22, 2005, Plaintiffs counsel, believing both City and County police had to be involved because the raid was outside City limits, sent letters to both the Wilmington Police Department and the New Castle County Police Department, asking the identity of individuals who conducted the raid, the reasons for the raid, and the results of the search.

New Castle County responded it had no information about the raid. The City responded that it would not advise of its position unless Plaintiffs answered a number of questions about the raid and their claim.

Plaintiffs filed suit against the City, Lawson, and unknown entities in the District Court in May of 2006. (Complaint, B-1) Defendants answered in June 2006. (B-13) The City claims no

individuals from the New Castle County Police, or other law enforcement agency, were involved in the raid. (Indeed, the City confirms it violated Delaware law, and it did not even notify any law enforcement agency of its raid outside of the City.) (B-29) Therefore, no "unknown" entities were added as Defendants.

The case was assigned to The Honorable Kent A. Jordan, who has since been appointed to the Court of Appeals for the Third Circuit. Currently, the case is unassigned.

Plaintiffs assert violations of their Constitutional rights to be free from illegal search and seizure, and to be afforded equal protection of the laws. Those claims are asserted under 42 U.S.C. § 1983 against Detective Lawson and the City of Wilmington. Plaintiffs also assert the state law tort claims for false imprisonment and battery. (Complaint, B-1)

Defendants have moved for Summary Judgment on all claims. This is Plaintiffs' Answering Brief in opposition to Defendants' Motion for Summary Judgment. References to the record shall be to the Appendix filed by the Defendants (referred to as A-   ) and the Appendix filed by Plaintiff with this Answering Brief. (referred to as B-   )

## II. SUMMARY OF ARGUMENT

1. The Invasion of the Plaintiff's home and physical restrain of Plaintiffs violated their rights under the Fourth and Fourteenth Amendments of United States Constitution.

Detective Lawson obtained a search warrant by submitting a false and misleading affidavit of probable cause to a magistrate. A warrant issued in such circumstances is not valid and does not authorize breaking into Plaintiffs' home and seizing the Plaintiffs. When Lawson's affidavit is rewritten to remove the false statements, and to add facts he intentionally omitted, there is clearly no probable cause for the invasion of Plaintiffs' home and the seizure of their persons.

Further, the raid of Plaintiffs' home by a 20 man SWAT Team wielding automatic weapons was an excessive use of force. The Defendants violated the long-standing "knock and announce rule", acted outside of the jurisdiction of the City of Wilmington and violated Delaware law by conducting the raid before 6:00 A.M.

The Defendants obtained and executed this search warrant primarily because Plaintiffs' race was common to the suspect they were pursuing. Defendants apparently felt comfortable violating statutory and constitutional requirements because they were raiding an African American's home. The deciding factor in the Defendants' decision to invade Plaintiffs' home was Plaintiffs' race.

2. There are issues of fact precluding Summary Judgment as to the liability of the City of Wilmington for the violation of Plaintiffs' Constitutional rights. Municipal liability under 42 U.S.C. § 1983 requires a showing that the violation of constitutional rights was based upon a municipal policy or custom. The failure to train employees may establish municipal liability under Section 1983. Here, the City has admitted and continues to contend that the manner in which Lawson obtained and executed the search warrant for the invasion of Plaintiffs' home was consistent with the policies of the City. The City has endorsed and ratified Lawson's conduct and therefore is liable under Section 1983.

By asserting Lawson need not be aware of the Fourth Amendment requirements for obtaining and executing a search warrant demonstrates the City's utter failure to adequately train its police officers also leading to liability under 42 U.S.C. § 1983.

3. The claims against Defendant Lawson should not be dismissed on the basis of qualified immunity. In evaluating the claim of qualified immunity, a two-part test is applied. First, the court must determine whether the facts support a claim of a violation of a constitutional right

3

and, second the court must determine whether that right was clearly established at the time of the violation.

In the present case, it is clear that Plaintiff's Constitutional rights were violated by Lawson's false and misleading affidavit of probable cause and use of excessive force in the execution of the invalid search warrant.

Defendants claim that these Fourth Amendment rights were not clearly established in 2005 when Lawson applied for the warrant to invade Plaintiffs' home is frivolous. Courts have long recognized the Fourth Amendment requires a search warrant issue only upon an affidavit establishing probable cause. An officer in Lawson's position cannot claim the Fourth Amendment does not clearly establish that submitting a false and misleading affidavit is a violation of constitutional rights. Nor can Lawson claim that having a 20 man SWAT Team invade a home where there is no basis to believe a suspect was present, in violation of the "knock and announce rule", and outside of the jurisdiction of the City did not violate clearly established constitutional rights. Lawson is not immune from suit.

4. Plaintiffs' state law claims of false imprisonment and battery are not barred by the "arrest privilege". Simply because Lawson was able to unlawfully obtain a warrant does not mean that his and his SWAT Team's conduct is insulated from any liability. The Defendants had no basis to apply for or execute a warrant outside of their jurisdiction, and no basis to execute a warrant in violation of the common law and Fourth Amendment "knock and announce" rule. There can be no "arrest privilege" when the warrant is invalid and invalidly executed.

The warrant gave Lawson authority to invade Plaintiffs' home. He commissioned a SWAT Team to execute the warrant. The SWAT Team members were Lawson's agents and he, as the principal, is liable for their conduct. Lawson cannot avail himself of any sort of privilege

4

based upon a warrant which he procured through the use of false statements and omissions and then directed its execution in an illegal, invalid and unconstitutional manner.

## III. STATEMENT OF FACTS

(1) Introduction

The "Statement of Facts" in the Defendants' Opening Brief (Opening Brief) contains numerous misstatements of the record, relies upon a version of the facts slanted extremely in Defendants' favor, and requests the Court make inferences favoring Defendants' positions.

For example, Defendants repeatedly state the murder suspect, Dwayne A. Walker, (DAW) has the same first and last name as Plaintiff DeWayne Walker, Sr. or his son, Plaintiff DeWayne Walker, Jr. (see Opening Brief, pages 1, 3 and 17)  The names simply are not the same, no matter how much Defendants wish they were.

Defendants, incredibly, claim a DELJIS record, upon which Lawson based his probable cause affidavit, yielded a larceny report which indicated Plaintiffs' home (118 Dutton Drive) was in Wilton Park (supposedly corroborating the C.I.'s second statement as to DAW's location). (Opening Brief, p. 5) It does not.  Actually, the Report (A-45) shows that in 2003 Plaintiff Karen Walker reported a larceny in Wilton Park on Appleby Road. (A stolen bicycle, in fact.  See Affidavit of DeWayne Sr., B-31) Plaintiffs do not, and have never, lived in Wilton Park. 118 Dutton Drive is not in Wilton Park.

Throughout their brief, Defendants parrot the false statement from Lawson's affidavit that the C.I. said DAW was "hiding at his mother's house in New Castle".  The C.I. never said this.  When, as required at this stage, the facts are viewed in the light most favorable to the Plaintiffs, Summary Judgment must be denied.

(2) THE CITY POLICE RAID OUTSIDE OF THE CITY.

5

Before dawn on September 15, 2005, Plaintiff DeWayne Walker, Sr. (hereafter DeWayne Sr.) was in the finished basement of his home at 118 Dutton Drive in New Castle, Delaware, preparing to leave for work. DeWayne Sr. is a Navy veteran who works at Noramco as a Pharmaceuticals operator. He has no criminal record. (DeWayne Sr.'s depo. p. 3-8, B-55-56) DeWayne Sr.'s wife, Karen, on September 15, was on the first floor of their home, tending to their 2-year-old daughter. Karen leaves for work daily at 6AM. At that time she worked as a substance abuse counselor at Connections in Wilmington. She has no criminal record. (K. Walker Depo., p. 2, 3, B-44) Karen and DeWayne Sr.'s son, DeWayne Jr., was still in bed upstairs. DeWayne, Jr. is an honor roll student at William Penn High School, and a member of the school's nationally recognized robotics team. His alarm was set to go off at 6 AM. He has no criminal record. (DeWayne Jr. depo. p. 2-6, A-227-231; K. Walker depo. p. 4, 29, 30 B-44, 50, 51)

Before 6 AM (in violation of their warrant and Delaware law), the SWAT Team, without any knock or notice (in violation of common and Constitutional law), broke through the Walker's locked front door. DeWayne Sr. heard his front door being smashed open with a loud bang, and then a second bang as the door hit the table near the front door. The actuator of the screen door was torn off the wall and his front door lock was ripped apart by the force of the invaders penetrating his home. DeWayne Sr. heard his wife and small daughter screaming, and heard dozens of rushing feet into and through his house. In seconds, DeWayne Sr. was confronted by numerous masked men carrying automatic weapons with laser-pointed sights, commanding him not to move. He was pushed to his knees and hand cuffed. (DeWayne Sr., p. 10-12, B-57)

6

Simultaneously, his wife was ordered to the ground with automatic weapons aimed at her and her young daughter. DeWayne Jr. was rousted from his bed at gunpoint, forced to his knees and hand cuffed. The team of twenty officers, (which included K-9 officers), swept through the Walkers' house, damaging floors, staining carpets, and breaking the attic door, furniture and stair railing. (DeWayne Sr. p. 11-14, 23-28, 40-41, B-57-61, 64; DeWayne Jr., p. 4,5,11, A-229, 230, 236; K. Walker p. 5-7, B-44, 45)

After the SWAT Team finished, Detective Lawson appeared, gathered all of the Walkers in their family room, told them a mistake had been made and said "these things happen". He gave DeWayne Sr. a business card and told him to call to address the damage done to his house. (K. Walker, p. 11, B-46; DeWayne, Sr., p. 1-15, 29, 30 B-58, 62; DeWayne Jr., p. 5, 6, A-231, 232). Despite conclusive photographic evidence, Lawson now denies any damage and claims the Walker's door was not locked. (Lawson depo., p. 6, A-115)

Lawson told Mrs. Walker they raided her house because her middle name is "Alicia" and the name of a murder suspect's mother is Alicia Walker. (K. Walker, p. 9-11, B-45, 46) That was untrue. In fact, Lawson believed DAW's mother might not be named "Walker" and did not know what, if any, relative of DAW could have been at the Plaintiffs' home. (Lawson depo. pp. 31-40; A-140-149). Lawson directed the raid anyway. Lawson knew of no evidence DAW nor any relative of DAW had ever been at 118 Dutton Drive.

The police then left the Walkers with no apology and no further explanation.

While the raid was taking place, a neighbor of the Walkers asked an officer outside what was going on, if there was any trouble, and the officer simply responded "don't worry about Walker, you won't be seeing him for a while". All of the Plaintiffs were severely traumatized and

7

ostracized by their neighbors. All have sought psychological treatment. (DeWayne Sr. p. 16-21, B-58, 59; K. Walker, p. 19-26, B-48-50; DeWayne Jr., p. 7, 8 A-232-233)

Wilmington City Police, under the direction of Detective Lawson, undertook this raid without any notice to New Castle County Police or any other law enforcement agency. (See City's Answers to Interrogatories B-29). The City asserts in its Answer to the Complaint and Interrogatories that such a raid outside its jurisdiction is allowed under State law, citing 11 Del. C. § 1911 and 1941, *et. seq.* (Answer, p. 62, 63, B-20) However, § 1911 gives authority only for statewide arrests with an appropriate warrant and requires notice to the appropriate jurisdiction. There was no arrest warrant being executed, only a search warrant, and City police gave no notice to any other agency. Section 1941 gives law enforcement agencies authority to request other agencies for assistance in emergencies. This was not an emergency. City police had the house under surveillance for hours and obtained a daytime warrant. Neither § 1941 nor 1911 justifies the raid. The raid was made by City officers outside their jurisdiction without any authority.

(3) CITY POLICE INVESTIGATION OF THE KILLING DEWAYNE FREEMAN.

On September 13, 2003, between 2 and 3 in the afternoon, near 3rd and Franklin Streets in the City, Mr. Dewayne Freeman was stabbed and killed during a drug dispute. City Police rather quickly determined, that Dwayne A. Walker, (DAW) date of birth December 10, 1982, was the likely perpetrator.

Lawson, the lead investigator, obtained an arrest warrant for DAW on September 13, at Justice of the Peace Court 20 for Murder in the First Degree and possession of a deadly weapon in the commission of a felony. (Crime Reports, A-1-35)

8

(4) THE SEARCH WARRANT FOR 118 DUTTON DRIVE, NEW CASTLE, DELAWARE.

On September 13 or 14, City Police Detective Jeffrey Silvers (hereafter Silvers) was contacted by a confidential informant (C.I.). Silvers says his informant was reliable because he had in the past provided accurate information to Silvers (for pay). (Silvers depo. A-180-184; C.I. depo. p. 6, A-203)

The C.I. told Silvers that his sister-in-law is the mother of 2 children by DAW, and that DAW was at his sister-in-law's house. The CI took Silvers to the sister-in-law's address. (C.I. depo. p. 9-11, A-206-208) In its Brief, the City claims the police did not enter that location because they had no warrant. (Opening Brief, p. 4) In fact, neither Silvers nor Lawson admits the C.I. ever provided such information. There is no written record City police were told of the relationship between the C.I., the C.I.'s sister-in-law and the suspect, or that the suspect was staying at the C.I.'s sister-in-law's house. Either the C.I. was not reliable, the police let the suspect get away and decided not to make a record of their failure, or the Defendants are now misrepresenting the facts in an attempt to bolster their claim the police investigation was lawful and careful.

Later, the C.I. again contacted Silvers and said if DAW was not at his sister-in-law's house he would probably go to his mother's house in the Wilton area of New Castle. The C.I. assumed that since DAW was wanted for murder, he would go to his mother's house. (C.I. depo., p.12-14, A-209-211, 216, 224). Recklessly, the Police did not ask the C.I. for the name of DAW's mother. The C.I. did not, as Lawson swore in his probable cause affidavit, affirmatively state DAW was ". . . currently hiding at his mother's house in New Castle . . ."

The C.I. also said DAW's mother's name may not be Walker. (Lawson depo. p.39, A-148) This confirms information Lawson had developed through a September 13, 2005 check of DAW's previous addresses on the DELJIS system. This record showed DAW was associated with Annette Henry, DAW's mother. (Lawson depo. p. 38, 39, A-147-148; Record A-70)[1] The C.I. reported to Police that DAW's mother drove a Nissan Maxima. (C.I. depo. P. 16, 25, A-213, 22) Lawson now falsely claims the CI said DAW's mother drove a Lexus. Obviously, Lawson makes this claim because police surveillance of the Plaintiffs showed Karen Walker driving a Lexus. (Lawson depo. p. 41, 47, A-150, 156)

Based on the C.I.'s statement that DAW's mother lived in New Castle, Silvers ran a DELJIS check, attempting to find anyone named Walker in New Castle. He found the DELJIS Report set forth in the Defendants' Appendix at A-45. This Report concerns a 2003 incident where Plaintiff Karen Walker reported to the New Castle County police that her son DeWayne Jr.'s bicycle had been stolen from Wilton Park off of Appleby Road in New Castle. (DeWayne Sr. Affidavit B-31) On the Report, DeWayne Jr. is incorrectly referred to as Dwayne Walker. The report correctly states DeWayne Jr. has no middle name (NMN) and is a Junior (J). The Walker's address is also mistakenly referenced in the report as 118 Dutton Court, not Dutton Drive. (A different road in New Castle)

Silvers gave the Report to Lawson. Incredibly, Lawson claims he believed that the "Dwayne Walker NMN, J" in the Report was his suspect, DAW. (Lawson depo. p. 26-28, A-135-137) He claims this even though his DAW records show in 2003 DAW was not having his

---

[1] The Appendix to the Defendants' Opening Brief included part of the DELJIS Criminal Record for Dwyne A. Walker twice (A-38-44 and A-52-57), which City Police downloaded on September 13, 2005 but intentionally omitted the "Additional Identification Data", downloaded at the same time, which identifies Annette Henry. These pages are in Plaintiffs' Appendix at B-68.

bike stolen anywhere near Dutton Court, Appleby Road or Wilton Park. In 2003, DAW was in jail. (See Sentence Order B-37)  Lawson admits his records indicate that in 2003 DAW would have been in jail or out of state.  (Lawson depo. p. 28, 29, A-137, 138)  Either way, Lawson knew DAW was not a witness to a bicycle theft in Wilton Park in 2003.[2]  Lawson also stated that if the Report had not shown Karen Walker's race as black, he would have suspected there was no relation to DAW. (Lawson depo. p. 55, A-164)

Lawson had 118 Dutton Drive put under surveillance.  He did this even though he suspected DAW's mother was not named "Walker" and had to know the "Dwayne Walker" in the DELJIS Report (A-45) could not be his suspect.  Lawson told the surveillance team 118 Dutton Drive was DAW's family residence.  Surveillance showed Mrs. Walker (with DeWayne Jr.) drove the Walkers' Lexus to Chester, Pennsylvania on September 14th, and there may have been a small child in the house. (A-71) The surveillance showed no indication that either DAW or any relative of DAW was at that location or had ever been at that location.  The surveillance did not disclose a Nissan Maxima at the property. (Lawson depo. p. 41-44, A-150-153)

In their Answer to the Complaint, Defendants falsely contend an "Alicia" Walker drove DAW to Chester immediately after he killed DeWayne Freeman on September 13. (B-14) Lawson told Plaintiff Karen Walker that "Alicia" was DAW's mother's name.  However, neither Lawson, Silvers, the C.I., nor any record makes any reference to an "Alicia" Walker.  No Alicia was ever found. (Lawson depo. p. 53, A-162) The references to an Alicia Walker in Court filings and by Lawson can only be the City's, after the fact, attempt to justify the illegal actions of its

---

[2] In their Brief Defendants emphasize the purported relationship between Wilton Park and the Plaintiffs because of Lawson's and the C.I.'s testimony that DAW's mother lived in the "Wilton area".  However, the word "Wilton" does not appear in Lawson's affidavit.

police force.  The City, thus, has not only ratified Lawson's false statements, it has enlarged upon

and embellished them.

Lawson, purportedly based on the DELJIS Report of the stolen bicycle in 2003, falsely

claims he found Conectiv Power Company records which billed "Dwayne" Walker at 118 Dutton

Drive.  In fact, the Conectiv (or Delmarva Power) bills state DeWayne Walker lives at that

address.  (DeWayne Sr. Affidavit B-31)  Lawson then says he ran a DELJIS Report which

confirmed that "Dwayne" Walker lives at 118 Dutton Drive.  In fact, that Report correctly shows

DeWayne, Sr. at that address. (A-49)

Lawson then took an inexcusably reckless gamble.  He went to a Magistrate with an

Affidavit of Probable Cause which contained many statements he knew were false and which

omitted a number of clearly important facts.  Lawson swore in his affidavit the C.I. stated DAW,

"is currently hiding at his mother's house in New Castle and is making plans to flee Delaware."

(A-50, paragraph 8) The C.I. never said any such thing.  He said only he assumed DAW would

probably go to his mother's house.  Since the police were already looking for DAW's mother (and

other relatives), the only really pertinent information from the CI was that he thought DAW's

mother lived in New Castle.  That information is not probable cause to break through the door of

any African American named Walker in all of New Castle.

Lawson then falsely swore a DELJIS record stated  "a Dwayne Walker, DOB December

10, 1982, with a previous incident at 118 Dutton Drive in New Castle." (Paragraph 9, A-51)  As

has been shown, this DELJIS Record concerned a stolen bicycle in 2003.  The Record makes no

reference to Dwayne Walker with birth date of December 10, 1982.  Lawson simply made that

up.  More importantly, Lawson left out crucial information from his affidavit.  He left out that his

suspect DAW (DOB December 10, 1982) was in jail in 2003 when the DELJIS (stolen bike)

record he relied on was created. (See 2001 Sentence Order, B-37, showing DAW was sentenced to 4 years at level 5) He left out that the 2003 DELJIS record he relied on to place DAW at 118 Dutton Drive in September 2005 clearly referred to someone else. (A-45) It described Dwayne Walker NMN, J (no middle name, junior). His suspect was Dwayne A. Walker – not a "junior", and with a middle name.

Lawson then falsely swore Conectiv and DELJIS records (Affidavit A-51) show Dwayne Walker currently living at 118 Dutton Drive in New Castle. Conectiv, in fact, sent bills DeWayne Sr. (DeWayne Sr. Aff. B-31), and the DELJIS record (see page A-49) shows DeWayne Sr. at 118 Dutton Drive.

Lawson purposely left out of his affidavit that police surveillance showed no evidence DAW or any relative of DAW ever being present at 118 Dutton Drive. (Lawson depo. p. 44, A-153) Surveillance (and motor vehicle records) showed Karen Walker drove the Lexus owned by the Walkers of 118 Dutton Drive, while the C.I. told the police DAW's mother drove a Nissan Maxima. Lawson purposely left out of his affidavit that no Maxima was seen by the team watching the Plaintiffs' home.

Lawson left out he believed DAW's mother may not be named "Walker". He now claims he both did (Lawson depo. p.31, 39, 40, A-140, 148, 149) and did not (depo. p.32, 33, A-141, 142)[3] believe Plaintiff Karen Walker was DAW's mother.

---

[3]   Lawson testified regarding his beliefs as to Karen Walker being identified in DELJIS Records (A-45) as follows:
Q. In 1996, he would have been 13, 14 years old; is that right?
A. Which Dwayne Walker?
Q. The suspect.
A. Yes.
Q. And he would have gone through family court; isn't that right?
A. Sure.

Lawson had no basis for a warrant application. Clearly he was taking a shot in the dark and was willing to swear to almost anything to take his gamble. To Lawson and the City, an African American family is fair game. Lawson's perjury does not establish probable cause.

Neither Lawson, the C.I., nor anyone else has ever determined if DAW, in fact, ever did go to his mother's house (in New Castle or elsewhere) before turning himself in on September 15 (Lawson depo. p. 42, A-151; CI depo. p. 19, 28, A-216, 225)

If the false statements are removed from the probable cause affidavit and the omissions inserted, there is absolutely no basis for a probable cause finding. But for the defective affidavit no warrant would have issued and the illegal search never would have taken place.

IV.    ARGUMENT

    A.    **THE INVASION OF THE PLAINTIFFS' HOME AND THE PHYSICAL RESTRAINT AND BATTERY OF PLAINTIFFS VIOLATED THEIR RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

        A.    Legal Standard.

Defendants have moved for summary judgment under Federal Rule of Civil Procedure 56. Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. When considering the record on summary judgment, the Court must view the evidence in the light most favorable to the non-

---

Q. And he would have probably some parent around someplace, right?
A. Correct.
Q. And so no one looked at those records to see if his mother was identified anywhere?
A. Not that I could recall. I think what we were maybe thinking, this may have been a relative, an aunt.
Q. This being?
A. Karen Walker. We weren't a hundred percent sure whether or not this was his mother or another relative at this location for Dutton Drive or Dutton Court.

14

moving party and draw all reasonable inferences and resolve all doubts in that party's favor. *Myers v. Medical Center of Delaware, Inc.*, 86 F. Supp. 2d 389, 393 (D. Del. 2000). Citing *Kornegay v. Cottingham*, 120 F.3d 392 (3d Cir. 1997); *Spring v. Gallegos*, 26 F.3d 392 (3d Cir. 1997). In an action under 42 U.S.C. § 1983 involving the Fourth Amendment, the existence of probable cause is typically a question of fact for a jury. *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997); see also *Curley v. Clem*, 298 F.3d 271 (3d Cir. 2002).

    B.    Merits of Argument.

    Plaintiffs' rights under the Fourth Amendment to be free from unreasonable search and seizure and their rights under the Fourteenth Amendment to equal protection were violated by the illegal search of their home at 118 Dutton Drive and the illegal search and restraint of their persons.

    Defendant Lawson obtained a search warrant by executing an affidavit which he knew contained false information and by omitting information clearly pertinent to his warrant application.

    Lawson also caused the warrant to be executed in an unreasonable manner, including but not limited to causing the search to begin before 6:00 a.m. in violation of Delaware law, having the warrant executed by City officers outside of the City, by violating the "knock and announce" rule, and by using unreasonable force under the circumstances.

    1.    OBTAINING AND EXERCISING A SEARCH WARRANT WITHOUT PROBABLE CAUSE AND ON THE BASIS OF RACE CONSTITUTES A VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS.

    Defendants' dismissal of the intrusion into Plaintiffs' home and the seizure of their persons as trivial mistakes eviscerates the Fourth Amendment. "At the very core [of the Fourth

15

Amendment] stands the right of a man to retreat into his home and there be free from unreasonable governmental intrusion . . ." *Silverman v. United States*, 365 U.S. 505, 511 (1961). The actual physical entry into the home is the chief evil against which the Fourth Amendment is directed. *Payton v. New York*, 445 U.S. 573, 585 (1980). See also *United States v. United States District Court*, 407 U.S. 297, 313 (1972).

The Defendants' cavalier attitude regarding the invasion of Plaintiffs' home, not only at the time of invasion, but throughout this litigation, must not be countenanced.

Defendants' claim the invasion is *per* se valid because a warrant issued. This demonstrates their misunderstanding of the Fourth Amendment's requirement a neutral and detached magistrate issue warrants. Simply because Lawson was able to pull the wool over a magistrate's eyes does not mean the search was presumptively valid. Simply because the warrant issued does not mean the warrant should have issued.

The Third Circuit Court of Appeals in *Wilson v. Russo*, 212 F.3d 781, 787 (3d. Cir. 2000), with respect to basic reasons for the Fourth Amendment warrant requirements stated:

> . . . [O]ne of the reasons for requiring a neutral magistrate to evaluate probable cause is that an uninterested party is presumably better suited to review and evaluate the facts than an officer pursuing a lead. 'The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection insists requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.' *Johnson v. United States*, 333 U.S. 10, 13-14, 68 S. Ct. 367, 92 L.Ed. 436 (1948) (cited in *Payton v. New York*, 445 U.S. 573, 586 n.24, 100, S. Ct. 1371, 630 L.Ed.2d 639 (1980)). It follows that a police officer cannot make unilateral decisions about the materiality of information, or, after satisfying him or herself that probable cause exists, merely inform the magistrate or judge of inculpatory evidence.

See also *Myers v. Medical Center of Delaware, Inc.*, 86 F. Supp.2d 389 (D. Del. 2000).

16

Here, Lawson presented the magistrate with false and misleading information, and omitted essential facts. A warrant which issues in such circumstance is not valid and cannot justify or authorize breaking into a home and seizing its innocent residents.

Defendants do not dispute they may be liable under 42 U.S.C. § 1983 where a law enforcement officer submits a false affidavit to a magistrate. Liability attaches when the law enforcement agent knowingly, or with reckless regard of the truth, makes false statements or omissions in a warrant application and such statements and omissions are material to the finding of probable cause. *Franks v. Delaware*, 438 U.S. 154 (1978), *Sherwood v. Mulvihill,* supra.

When the record is viewed in the light most favorable to Plaintiffs, as is required at this stage of the proceedings, Lawson knowingly made false material statements in his affidavit, and omitted material facts which a reasonable magistrate would want to know.

When the affidavit is rewritten to remove the false statements and add the facts that were omitted, it is clear there was no probable cause to invade Plaintiffs' home.

Lawson's false affidavit is in the Appendix to Defendants' Opening Brief at pages A-50 and 51. Only paragraphs 8-10 of the affidavit are pertinent. In all three of those paragraphs Lawson, under oath, submitted false reasons to fool the magistrate into believing his murder suspect, Dwayne A. Walker, is associated with 118 Dutton Drive and/or with Plaintiffs.

Paragraph 8 of the affidavit states,

"8.   Your affiant can truly state that on 9-14-05, a past proven reliable informant contacted Detective Jeff Silvers of the Wilmington Police Drug Unit with information as to the whereabouts of the suspect, Dwayne Walker. The informant stated Walker is currently hiding at his mother's house in New Castle and is making plans to flee Delaware."

The key information in that paragraph is in the second sentence. It is completely false. The informant stated only he "assumed" Walker, would go to his mother's house in New Castle.

17

He did not say the suspect was "currently hiding at his mother's house." He did not say the suspect was making plans to flee Delaware.

In Paragraph 9 Lawson falsely swears:

"9. Your affiant can truly state that according to DELJIS' Drecords, (sic) a Dwayne Walker DOB. 12-10-82 with a previous reported incident at 118 Dutton Drive in New Castle."

Aside from the typographical errors and the fact that paragraph 9 is not even a sentence, Lawson knew that the information he swore to was false. The DELJIS record he referred to is set forth at page A-45 of the Defendants' Appendix. That record does not refer to "a Dwayne Walker DOB. 12-10-82." Lawson lied and inserted the suspect's date of birth.

The DELJIS record does not refer to "a previous reported incident at 118 Dutton Drive in New Castle" but actually describes a larceny at Appleby Road in Wilton Park. It merely says the victim and a witness to the larceny in Wilton Park live at 118 Dutton Court.

More important is what Lawson left out of his description of the DELJIS record at A-45. He left out the record describes the witness as "Walker, Dwayne NMN J." Lawson knew this means "no middle name", "junior". There is no record the suspect was a junior (though Lawson now falsely claims he is), and clearly he has a middle name. In fact in every record (the crime reports, supplemental crime reports, DELJIS records, and sentencing records) the suspect is referred to as "Dwayne A. Walker." (emphasis added.) Only Lawson's warrant and warrant application omit the "A". Lawson hid from the magistrate that his suspect had a middle initial while the records he referenced to the magistrate refer to an individual without a middle initial.

Lawson also omitted that while he says he believed that the "Walker, Dwayne NMN "J" in the 2003 DELJIS report was his suspect, he had records which showed his suspect was in jail in

2003. Lawson knew the DELJIS report in no way connected 118 Dutton Drive or Plaintiffs to his suspect. He knew this record did not support his warrant application.

Lawson's false swearing continues in Paragraph 10 of his affidavit:

"10.  Your affiant can truly state current records with Conectiv Power Company of Delaware show 118 Dutton Drive, New Castle registered to Dwayne Walker. A check on DELJIS currently shows Dwayne Walker, Sr. with a current address of 118 Dutton Drive in New Castle."

Both sentences of paragraph number 10 are false.  Conectiv Power records show 118 Dutton Drive registered to DeWayne Walker, Sr. The DELJIS record shows DeWayne Walker, Sr. lives at 118 Dutton Drive. (CA-49). These are not typographical or spelling errors. They are false statements submitted to obtain a warrant authorizing the violent entry into an African American family's home.

Lawson also left out of his affidavit: (1) the C.I. stated the suspect's mother may not have had the last name of Walker (the last name of all the residents of 118 Dutton Drive); (2) the C.I. stated the suspect's mother drove a Nissan Maxima, while the surveillance team saw Mrs. Walker drive a Lexus at 118 Dutton Drive; (3) the surveillance showed no evidence the suspect was ever at 118 Dutton Drive; and (4) the surveillance team did not see a Nissan Maxima at 118 Dutton Drive. These are all omissions which a reasonable person would want to know in evaluating the facts for purposes of issuing a search warrant. See *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006) (recognizing that an officer's omissions are deemed in reckless regard for the truth when they are matters a reasonable person would want to know).

When Lawson's affidavit is rewritten to correct the misrepresentations and omissions, no magistrate would find probable cause.  This is not a situation like *Sherwood v. Mulvihill*, supra,

19

where the omissions and false statements were deemed not material to the affidavit. Here, when

the false statements are redacted and pertinent information is added, there is no probable cause.

Rewritten, paragraph 8 would say:

"The informant stated he believes Walker's mother lives in New Castle and assumes Walker would probably go there."

Paragraph 9 rewritten would state:

"Your affiant can truly state that a DELJIS record from 2003, at a time when the suspect Walker was imprisoned, shows a Dwayne Walker, Jr., who has no middle name, was a witness to an incident of larceny which took place in Wilton Park off of Appleby Road in New Castle, Delaware. The incident was reported by a Karen Walker, who resides at 118 Dutton Drive in New Castle."

Paragraph 10 of the affidavit rewritten would state:

"Your affiant can truly state current records with Conectiv Power of Delaware show 118 Dutton Drive, New Castle registered to DeWayne Walker, Sr. A check on DELJIS currently shows DeWayne Walker, Sr. with an current address of 118 Dutton Drive in New Castle."

A paragraph should then be added to the affidavit stating:

"Your affiant can truly state that the confidential informant informed Detective Silvers that Walker's mother drover a Nissan Maxima. Surveillance of the residence at 118 Dutton Drive showed a woman driving a Lexus. Surveillance showed no indication that the suspect was present."

This is not, as Defendants suggest, a situation of misspelling and innocent mistakes.

When the true facts as known to Lawson are placed in the affidavit and his lies are removed,

there is no basis for issuance of a search warrant. Lawson's actions were an intentional violation

of the plaintiffs' civil rights. Summary judgment must be denied.

2.    THERE ARE ISSUES OF FACT PRECLUDING SUMMARY JUDGMENT ON PLAINTIFFS' CLAIM THAT DEFENDANTS USED EXCESSIVE FORCE IN EXECUTING THE SEARCH WARRANT AND SEIZURE OF PERSONS.

The standards for evaluating if a seizure is effected by the use of excessive force are set forth in *Graham v. Connor*, 490 U.S. 386 (1989). The test is whether under the totality of the circumstances the level of force used was objectively reasonable.

Defendants ask this court to make findings of fact in their favor and make inferences from those facts favorable to them in order to find that the storming of Plaintiffs' house with 20 or more SWAT officers (including K9), automatic weapons, and a battering ram was reasonable under the circumstances of this case.

The evaluation of "reasonableness" under the Fourth Amendment resembles the evaluation of "reasonableness" in tort law. Therefore, the issue is a question for a jury and should not be resolved on summary judgment. *Abraham v. Raso*, 183 F.3d 279, 290 (3d Cir. 1999). See also *Couden v. Duffy*, 446 F.3d 483 (3d. Cir. 2006); *Watkins v. New Castle County*, 374 F. Supp. 3d 379 (D. Del. 2005).

Here, the totality of the circumstances demonstrate issues of fact as to whether Lawson and his SWAT Team agents used force which was reasonable. For example, the surveillance of 118 Dutton Court the day before the warrant was executed showed not only no suggestion of any danger at the location, but, in fact, no indication the suspect was present. The level of force used (i.e. 20 man SWAT Team), was not reasonable.

The court must also look to the circumstances of the warrant application itself. Lawson knew the information contained in his warrant application pertaining to 118 Dutton Drive was false, and that there was little, if any, chance the suspect was there. Any level of force was too much. For this reason alone summary judgment must be denied.

There are further reasons the Court should not entertain Defendants' motion for summary judgment as to the reasonableness of Defendants' actions in executing this warrant.

21

First, Defendants had no jurisdiction to undertake the raid at 118 Dutton Drive. Defendants assert that 11 Del.C. § 1911 and 1941 provide state-wide jurisdiction for the City police, but the statutes do no such thing. Section 1911 gives authority only for state-wide arrests with a warrant and requires that, absent unusual circumstances, notice to the appropriate jurisdiction. Here, there was not an arrest warrant being executed but a search warrant, and there was no notice to New Castle County Police. Section 1941 et. seq. give law enforcement agencies authority in emergencies. This was not such a case.

Second, the execution of this warrant clearly violated of the Fourth Amendment in that the officers ignored the long-standing "knock and announce" rule. The United States Supreme Court has acknowledged that the "common law" requirement that law enforcement officers knock on a door and announce their identity before attempting a forcible entry has been incorporated into the Fourth Amendment guarantees against unreasonable search and seizure. *Hudson v. Michigan*, 126 S.Ct. 2159 (2006); *Richards v. Wisconsin*, 520 U.S. 385 (1997). See also *Kornegay v. Cottingham*, 120 F.3d. 392 (3rd. Cir. 1997). A "no-knock" entry is justified only when the police reasonably believe under particular circumstances that the knock and announce would be dangerous or futile. "Courts have upheld dispensing with the knock and announce requirement in four situations: (1) the individual inside was aware of the officers' identity and thus announcement would have been a useless gesture; (2) announcement might lead to the sought individual's escape; (3) announcement might place the officers in physical peril; and (4) announcement might lead to the destruction of evidence." 120 F.3d. at 397.

Obviously, none of those apply in the present case. Before 6:00 a.m. on September 13, 2005, Plaintiffs had no idea 20 officers were outside and about to raid their home. With a 20 man SWAT Team surrounding their home, including K9 units, there was no chance an

22

announcement would have led to an escape, placed the officers in danger, or led to the destruction of evidence. The search warrant (A-36) gave authority to search for a pocketknife and clothing. It was not even issued to search for or arrest a murder suspect.

The mere fact that the crime being investigated was a murder is not dispositive. The ordinary risks that surround a general category of criminal behavior are insufficient in and of themselves to create the exigent circumstances which would allow dispensing with the knock and announce rule. (Kornegay, supra, 120 F.3d at 398, 99).[4]

In *Hudson,* supra, The Supreme Court held that violation of the "knock and announce" rule may not require suppression of evidence in a criminal case, because, inter alia, the potential civil liability of the offending officers is an effective deterrent. (p. 10) Thus, the Defendants here should be exposed to liability for the violation.

Finally, the warrant (even though invalid) authorized only a daytime search (i.e. after 6:00 AM by statute 11 Del. C. § 2308). It was, *per* se, unreasonable for the SWAT Team to break in before 6:00 AM. There are clear disputes of fact precluding Summary Judgment on whether the officers' actions at the scene of this search were reasonable under the circumstances.

3. THE RE ARE ISSUES OF FACT WITH RESPECT TO PLAINTIFFS' CLAIM OF RACE-BASED DISCRIMINATION.

On pages 16 and 17 of the Opening Brief, Defendants assert Plaintiffs have attempted to restate their Fourth Amendment claims as either due process or equal protection claims. Defendants have misread the Complaint. Plaintiffs have not made a due process claim. Plaintiffs

---

[4] Even if it were appropriate to assume that the actual suspect was at 118 Dutton Drive (which it clearly was not), there is no indication in the record this was an individual who armed himself on a regular basis, had a history of extreme violent behavior or that there were firearms present within the house. Indeed DAW ultimately contacted clergy and turned himself in. (A-23, 24) He had a long record of primarily drug-related charges. The police knew DAW did not have a history of extreme violence.

23

assert the invasion of their home would not have taken place absent their race. This constitutes a violation of the equal protection clause of the United States Constitution.

On page 17 of the Opening Brief, Defendants claim the reason Plaintiffs' home was invaded was because of the "...error prompted by the common first and last name of the murder suspect Dwayne Walker." Defendants continue to hide behind this false statement. The murder suspect has been identified as Dwayne A. Walker in every record except for Lawson's false affidavit. The Plaintiffs in this case are DeWayne Walker, Jr. and DeWayne Walker, Sr. The Plaintiffs' names are not now and never have been the same as the suspect. It is Plaintiffs' race which is common with the suspect.

Lawson himself has admitted race was, in effect, the deciding factor in his determination that 118 Dutton Drive, should be invaded. (Lawson Depo. p. 56, A-165) Essentially Lawson says that if the records did not show Karen Walker (whom he believed was his suspect's mother) to be black, the invasion would not have happened. He says this even though he was not sure the suspect's mother was named "Walker" or that suspect's mother was black.

In Defendants' Answer to the Complaint the City again points to the race of the Plaintiffs as the basis for the invasion of their home. (Answer to the Complaint, paragraph 49, B-19)

Defendants now seem to argue that anyone named Walker, of any race, could have been subjected to home invasion by the police on September 13 through September 15, 2005. Obviously, that suggestion is not true and race was the deciding factor in the Defendants' decision to invade Plaintiffs' home.

**B. THERE ARE ISSUES OF FACT PRECLUDING SUMMARY JUDGMENT ON THE LIABILITY OF THE CITY OF WILMINGTON FOR THE VIOLATION OF PLAINTIFFS' CONSTITUTIONAL RIGHTS.**

24

Municipal liability for a Section 1983 claim requires a showing that violation of constitutional rights was based upon an official policy or custom of the municipality. *Monell v. Department of Social Services*, 436 US 658 (1978). A city's failure to train employees may establish municipal liability under Section 1983. *City of Canton v. Harris*, 489 US 378 (1989). See also *Watkins v. New Castle County*, 374 F.Supp.2d. 379 (D.Del. 2005)

In the present case, Plaintiffs in Counts 2 and 3 of their Complaint, have asserted the City is liable for the violation of their rights because the individual officers were acting pursuant to a policy or custom of the City of Wilmington and/or that these officers were acting in a manner which clearly demonstrates the City's deliberate indifference to their rights through a failure to adequately train those officers.

In Sections III and IV of their Opening Brief, Defendants claim Plaintiffs' Counts 2 and 3 have alleged a series of state law tort claims disguised as Federal Constitutional Right violations. Clearly, the City has misconstrued Plaintiffs' Complaint.

The key element of Plaintiff's assertion of liability against the City are the statements by the Senior Investigating Officer in this matter, Defendant Lawson. Lawson testified the manner in which he conducted his investigation and the manner in which he obtained and executed a search warrant for the invasion of Plaintiffs' home was consistent with the policies of the City. (Lawson depo. p. 48, A-157) Lawson admitted the City accepts that a significant percentage of search warrants procured by Wilmington Officers result in an invasion of the wrong house. (Lawson depo. p. 48, et. seq.)

This establishes City policy endorses application and execution of search warrants based upon affidavits which contain false information and which omit material information. It establishes the City endorses the use of excessive force in the execution of search warrants,

including acting outside the City's jurisdiction, proceeding in violation of the long-established "knock and announce rule", raiding the house before dawn, and using unreasonable and unnecessary force.

The City's conduct during this litigation further demonstrates its unconstitutional policies. The City's Answer demonstrates its complicity in the lies used to justify the raid. The City falsely claims a non-existent Alicia Walker drove DAW to Chester hours after the murder. This did not happen. The City has asserted the actions of its officers outside of the City are justified by State law, citing 11 Del. C. § 1911 and 1941. As has been indicated, supra, neither of these statutory provisions in any way authorizes the extraterritorial actions of the City in this case. Yet the City claims that it is its policy to construe these statutes to allow its illegal conduct. By endorsing Lawson's conduct and embellishing the record, the City is estopped to deny its liability for the violation of Plaintiffs' Constitutional rights.

Further, the claim in the City's Opening Brief to the effect that Lawson should be immune from suit because the Fourth Amendment warrant requirements are not clearly established rights demonstrates the City's utter failure to train its officers. The City claims a reasonable police officer employed by the City need not be aware that a warrant cannot be obtained through false statements and omissions; need not be aware that there is no basis for City officers to execute a search warrant outside the City limits; and need not be aware there is a requirement officers knock and announce their presence before invading a home.

The City contends its police are not trained to be aware of the Fourth Amendment. They are not trained to follow Constitutional and statutory requirements before breaking through doors with a team of heavily armed officers. The City has ratified the illegal conduct of its police

26

or is chargeable with the failure to train them. This is sufficient to establish the liability under 42

U.S.C. § 1983.

## C.  THE CLAIMS AGAINST DEFENDANT LAWSON SHOULD NOT BE DISMISSED ON THE BASIS OF QUALIFIED IMMUNITY.

In order to determine if there is qualified immunity, an objective reasonableness standard

is applied to evaluate a police officer's conduct in submitting a defective affidavit in support of a

warrant application. *Malley v. Briggs*, 475 US 335 (1986).

In the present case, Lawson obtained a search warrant through submission of a false and

misleading affidavit and then directed an illegal raid using excessive and illegal force, all of which

violate long-established Constitutional standards of search and seizure under the Fourth

Amendment. Clearly, there is no basis for a qualified immunity claim.

In evaluating a claim for qualified immunity, the courts apply a two-part test. First, the

court must determine whether there are facts which would support a claim of violation of a

Constitutional Right, and second, the court must determine whether that right was clearly

established at the time of the violation. *Curley v. Klem*, 298 F.3d. 271 (3rd. Cir. 2002). See also

*Couden v. Duffy*, 446 F.3d. 483 (3d. Cir. 2006); *Watkins v. New Castle County*, 374 F.Supp.2d.

379 (D.Del. 2005) and *Myers v. Medical Center of Delaware*, 86 F.Supp.2d. 389 (D.Del. 2000).

Under this analysis, a right may not be clearly established if it presents unusual legal

questions or where there are some significant legal authorities which lend support to the legality

or appropriateness of the conduct in question. *Couden v. Duffy*, supra., 446 F.3d. at 495 (3d. Cir.

2006) citing *Doe v. Groody*, 361 F.3d. 232, 243 (3d. Cir. 2004)

In the present case, the Defendants first argue at length that there has been no violation

of any Constitutional Rights of the Plaintiffs. However, as established, in argument A, supra,

27

when the evidence is viewed in a light favorable to the Plaintiffs, it is clear that their rights have been violated and that Lawson's false and misleading affidavit of probable cause led to the violation of those rights.

As to the second prong of the qualified immunity test, Defendants' position that Fourth Amendment rights were not clearly established in 2005, when Lawson applied for the warrant to invade Plaintiffs' home is at best frivolous.    The contours of the Fourth Amendment search warrant requirements are clearly established.

Here, as in *Myers v. Medical Center,* supra., the Court must recognize that the Fourth Amendment requirement that a search warrant issue only upon an affidavit establishing probably cause is clear and all police officers must be aware of that requirement.    Likewise, the constitutional limits as to excessive force are long established.  See *Couden v. Duffy,* supra.

Defendants cannot seriously be asking this Court to rule that a reasonable police officer in Lawson's position in 2005 would not know that it is a violation of the United States Constitution to submit a false and misleading affidavit of probable cause to a magistrate in order to obtain a search warrant.   Nor is it reasonable for an officer in Lawson's position to claim the Fourth Amendment did not clearly establish that having a 20 man SWAT Team invade a home before dawn where there was no basis to believe a suspect was present, in violation of the "knock and announce rule" and outside of the jurisdiction of the police agency did not a violate clearly established Constitutional Rights.

This is not a case like *County of Los Angeles v. Rettele,* _____ US _____ 127 S.Ct. 1989 (2007), where the validity of the warrant had been conceded.  This is not a case such as *Paff v. Kaltembach,* 204 F.3d. 625 (3d. Cir. 2000) which involved interpretation of First Amendment rights of demonstrators on property which was public but not considered a "public forum".

28

Unlike *Paff*, the present case does not concern close Constitutional issues but rather long standing and clear requirements as to the issuance of a search warrant based upon probable cause and the use of excessive force in the execution of an illegal warrant.

Defendants cannot argue City police officers can be ignorant of warrant requirements for qualified immunity purposes and at the same time assert adequate training for municipal liability purpose (See Argument B, supra.). Making false statements under oath in a search warrant affidavit is inappropriate, and there is no qualified immunity.

### D.  PLAINTIFFS' STATE LAW CLAIMS OF FALSE IMPRISONMENT AND BATTERY ARE NOT BARRED.

In their Argument V, Defendants assert Plaintiffs' State law claims of false imprisonment and battery are barred by what Defendants refer to as the "arrest privilege". Defendants contend that because Lawson procured a warrant, anything he or the SWAT Team he directed did is privileged conduct. Defendants further argue that because it was the SWAT Team and not Lawson himself which unlawfully imprisoned and committed battery upon Plaintiffs, Lawson cannot be liable.

Defendants present an illogical bootstrap argument and misapply the law of agency.

Defendants' argument relies upon their claim the warrant Lawson obtained was valid. That warrant was obtained through the presentation to a magistrate of a false and misleading affidavit. Defendants had no basis to apply for or execute a warrant outside of their jurisdiction, no basis to execute a warrant in violation of the common law and Fourth Amendment "knock and announce" rule. There can be no "arrest privilege" where, as here, the warrant is invalid and illegally executed.

Defendants ignore that the warrant was issued to Lawson and empowered him to obtain

"the assistance of any police officer or constable or any other necessary or proper person or persons for assistance." (See warrant at A-36) The SWAT Team which Lawson had execute the warrant he illegally obtained were Lawson's agents. They acted pursuant to the authority Lawson obtained and they acted pursuant to Lawson's direction and control. The false imprisonment of Plaintiffs and the battery committed upon Plaintiffs by the SWAT Team is the responsibility of Lawson. It is a well-settled principal of agency law that a principal is liable for the torts of his agents. 3 Am.Jur.2d. Agency § 264; Restatement of Agency 2d. § 343 – (cited with approval in *T.V. Spano Building Corporation v. Wilson*, 584 A.2d. 523 (Del. Super. 1990)). A principal is liable in situations where his agent commits a battery within the scope of his agency. See 6 Am.Jur. 2d. Assault & Battery, § 106.

Lawson cannot avail himself of any sort of privilege based upon the warrant where he, through the use of false statements and omissions, procured a warrant and then directed its execution in an illegal, invalid, unconstitutional manner.[5]

## V. CONCLUSION

On September 15, 2005, the lives of the Plaintiffs were changed forever. The City of Wilmington police broke into their home and held them at gunpoint. The police acted without a valid warrant, outside of their jurisdiction, without notice and before 6:00 AM.

Defendants attempt to trivialize their conduct, claiming this "mistake" was due to typographical errors and similar sounding names demonstrates the City's cavalier attitude towards serious violations of constitutional rights.

---

[5] It is noteworthy Defendants do not attempt to claim any kind of immunity under the Municipal Tort Claims Act for Lawson (10 Del. C. § 4010, *et. seq.*) Clearly, Lawson, in intentionally falsifying his affidavit, and intentionally directing false imprisonment and battery upon Plaintiffs, is ineligible to claim immunity. His conduct goes beyond the wanton negligence or willful and malicious intent which destroys the immunity of a municipal employee. See 10 Del. C. 4011(c).

Breaking into a person's home simply because that person is of the same race as a murder suspect is a violation of basic constitutional rights and the City's attempt to have this matter dismissed on Summary Judgment must be denied.

BIGGS AND BATTAGLIA

/s/ Victor F. Battaglia
/s/ Philip B. Bartoshesky
Victor F. Battaglia, Sr. (ID# 156)
Philip B. Bartoshesky (ID# 2056)
921 Orange Street
Wilmington, DE 19801
(302) 655-9677
VictorSr@batlaw.com
Pbarto@batlaw.com
Attorneys for Plaintiffs

July 12, 2007

31

## CERTIFICATE OF SERVICE

I, Philip B. Bartoshesky, undersigned counsel of record, hereby certify that on July 12, 2007, I caused one copy of the attached Plaintiffs' Answering Brief in Opposition to Defendants' Opening Brief in Support of Their Motion for Summary Judgment and Plaintiffs' Appendix to Their Brief in Opposition to Defendants' Opening Brief in Support of Their Motion for Summary Judgment to be served on the following by hand delivery:

Alex J. Mili, Jr., Esquire
Senior Assistant City Solicitor
City of Wilmington Law Department
Louis L. Redding City/County Building
800 N. French Street, 9th Floor
Wilmington, DE 19801
Attorney for Defendants City of
Wilmington and Detective Michael R. Lawson, Jr.

/s/ Philip B. Bartoshesky (#2056)
/s/ Victor F. Battaglia (#156)
Philip B. Bartoshesky, Esquire
Victor F. Battaglia
921 North Orange Street
Post Office Box 1489
Wilmington, Delaware 19899
Attorney for Plaintiffs

Dated: July 12, 2007