**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

DeWAYNE WALKER, SR, KAREN　　:
WALKER, his wife, D.W., JR., minor　:
child, and T.W., minor child,　　　　:
　　　　　　　　　　　　　　　　　:
　　　Plaintiffs,　　　　　　　　　:　　　C.A. No. 06-288 ___
　　　　　　　　　　　　　　　　　:
　　　v.　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　:
THE CITY OF WILMINGTON, a political　:
subdivision of the State of Delaware,　:
DETECTIVE MICHAEL R. LAWSON, JR.,　:
individually and in his official capacity, and　:
UNKNOWN ENTITIES,　　　　　　:
　　　　　　　　　　　　　　　　　:
　　　Defendants.　　　　　　　　　:

**DEFENDANTS' REPLY BRIEF IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT**

Alex J. Mili, Jr., Esquire (I.D. #4125)
Senior Assistant City Solicitor
Louis L. Redding City/County Building
800 N. French Street, 9th Floor
Wilmington, DE 19801
(302) 576-2175
Attorney for Defendants City of Wilmington and

DATE: July 23, 2007                                    Detective Michael R. Lawson, Jr.

## TABLE OF CONTENTS

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

SUPPLEMENTAL STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.      PLAINTIFFS' FOURTH AMENDMENT CLAIM DOES NOT SATISFY THE *FRANKS* STANDARD FOR INVALIDATING A WARRANT . . . . . . . . . . . . . . . . . . . . . . . . . . 4

           A.     THE THREE MISSTATEMENTS IN DETECTIVE LAWSON'S AFFIDAVIT ARE NOT DELIBERATE FALSEHOODS THAT SATISFY THE FIRST PRONG OF *FRANKS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

           B.     NONE OF THE FOUR OMISSIONS IN DETECTIVE LAWSON'S AFFIDAVIT ARE A DELIBERATE FALSEHOOD THAT SATISFY THE FIRST PRONG OF *FRANKS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    II.     DEFENDANTS EXECUTED THE SEARCH WARRANT WITHIN THE PERMISSIBLE BOUNDS OF FOURTH AMENDMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

           A.     EXECUTION OF A WARRANT OUTSIDE OF CITY LIMITS - 11 <u>DEL.C.</u> §§ 1911 & 1941 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

           B.     DAYTIME WARRANT - 11 <u>DEL.C.</u> § 2308. . . . . . . . . . . . . . . . . . . . . . . . 9

           C.     THE "KNOCK AND ANNOUNCE RULE" AND ITS ATTENDANT EXCEPTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    III.    PLAINTIFFS HAVE FAILED TO ESTABLISH ANY RACE-BASED DISCRIMINATION TO SUPPORT A VIOLATION OF THE EQUAL PROTECTION CLAUSE . . . . . . . 11

    IV.    PLAINTIFFS HAVE FAILED TO IDENTIFY AN OFFICIAL POLICY, AS DEFINED BY THE *MONELL* DOCTRINE, THAT WOULD ESTABLISH MUNICIPAL LIABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    V.     DETECTIVE LAWSON IS ENTITLED TO QUALIFIED IMMUNITY BECAUSE THERE ARE SIGNIFICANT LEGAL AUTHORITIES THAT LEND SUPPORT TO THE LEGALITY AND APPROPRIATENESS OF HIS CONDUCT . . . . . . . . . . . . . . . . 14

    VI.    DETECTIVE LAWSON IS NOT SUBJECT TO AGENCY LIABILITY FOR THE ALLEGED TORTS OF FELLOW OFFICERS, AND PLAINTIFFS HAVE NONETHELESS FAILED TO ESTABLISH THE PRIMA FACIE ELEMENTS OF THE TORTS OF BATTERY AND FALSE IMPRISONMENT . . . . . . . . . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

## **TABLE OF CITATIONS**

### **Cases**

*Baker v. McCollan*, 443 U.S. 137 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

*Blacknall v. Citarella*, 2006 U.S. App. LEXIS 2377(3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . .  12

*Bodine v. Warwick*, 72 F.3d 393 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

*Canton v. Harris*, 489 U.S. 378 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*Couden v. Duffy*, 446 F.3d 483 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*Franks v. Delaware*, 438 U.S. 154 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Graham v. Connor*, 490 U.S. 386 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*Harrison v. Christopher, et al.*, 2007 U.S. Dist. LEXIS 38824 (D.Del. May 25, 2007) . . . . . . . . . . . .  11

*Herman v. City of Milville*, 2003 U.S.App. LEXIS 8593 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . .  15

*Illinois v. Gates*, 462 U.S. 213 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*Los Angeles County v. Rettele*, __ U.S. __, 127 S.Ct. 1989 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . .  6

*Maryland v. Garrison*, 480 U.S. 79 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14, 15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) . . . . . . . . . . . . . . . . . . . . .  4

*Merkle v. Upper Public Sch. Dist.,* 211 F.3d 782 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

*Monell v. Department of Social Services*, 436 U.S. 658 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . .  12, 13

*Muehler v. Mena*, 544 U.S. 93 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

*Oakes v. K-Mart*, 1981 Del. Super. LEXIS 688 (Del. Super. Ct. 1981) . . . . . . . . . . . . . . . . . . . . . . .  17

*Oklahoma City v. Tuttle*, 471 U.S. 808 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*Ornelas v. United States*, 517 U.S. 690 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

*United States v. Cubbage*, 2003 U.S. Dist. LEXIS 1431(D. Del. 2003) . . . . . . . . . . . . . . . . . . . . . . .  10

### **Constitutional Provisions**

U.S. Const., Amend. IV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
U.S. Const., Amend. XIV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**Federal Statutes**

42 <u>U.S.C.</u> § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**State Statutes**

11 <u>Del.C.</u> § 1911 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

11 <u>Del.C.</u> § 1941 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

11 <u>Del.C.</u> § 2308 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

**Rules**

Fed.R.Civ.P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**Secondary Sources**

RESTATEMENT (Second) OF AGENCY § 2(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

RESTATEMENT (Second) OF AGENCY § 264 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

RESTATEMENT (Second) OF AGENCY § 343 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

RESTATEMENT (Second) OF TORTS § 13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**SUPPLEMENTAL STATEMENT OF FACTS**

Plaintiffs' Answering Brief takes issue with three particular statements of fact in Defendants' Opening Brief, even though these facts are supported by the record.   First, Plaintiffs disagree that they had the same name as murder suspect Dwayne Walker.  (PAB 5)[1]  The similarity of these names speaks for itself. Throughout their Answering Brief, Plaintiffs refer to the suspect as DAW, in hopes of de-emphasizing the common first and last name that led the police to reasonably (but mistakenly) execute a warrant at the Walkers' home.

Second, Plaintiffs dispute whether their address of 118 Dutton Drive is in Wilton.  (PAB 5) However, the DELJIS report cited by Defendants (which was generated by New Castle County police) does state that 118 Dutton Drive is in Wilton.  (A45)  If that report is erroneous, then Defendants do not dispute that 118 Dutton Drive is technically outside the boundaries of Wilton.  Defendants only contend that the County-generated DELJIS report listed the address as being in Wilton, which coincided with the confidential informant's tip that Dwayne Walker was staying at a house in Wilton.  (Informant A224)  This coincidence prompted the application for a search warrant at 118 Dutton Drive.

Third, Plaintiffs take issue with Detective Lawson's affidavit, which relays the confidential informant's tip that the suspect was "currently hiding at this mother's house."  (PAB 9)  Although the informant did not use the exact words of "currently hiding", the informant did indeed say that "[Walker's] mother lives in Wilton, and if he wasn't at [the informant's] sister-in-law's house, that's probably the most likely place he could be found." (Informant A208) Thus, Detective Lawson's affidavit accurately paraphrases the informant's statement.

Aside from the Plaintiffs' misunderstanding the above-cited facts, Plaintiffs' Answering Brief also sets forth three of its own misrepresentations of fact.  First, Plaintiffs contend that the search warrant was

---

[1]Throughout this Reply Brief, Defendants' Opening Brief will be cited as "DOB_" and Plaintiffs' Answering Brief will be cited as "PAB_".

1

executed before 6:00 a.m.  (PAB 6)  However, Plaintiffs' already averred under oath that the police did not enter their home until approximately 6:05 a.m.  (Pltfs' Cmpl. ¶9)

Second, Plaintiffs contend that there was no arrest warrant, but only a search warrant.  (PAB 8)  This misstatement overlooks the fact that the warrant authorized a search for Dwayne Walker so that he could be arrested for murder.  (A36-38)   Hence, the search warrant was an arrest warrant.

Third, Plaintiffs misrepresent the testimony of Detective Lawson regarding Plaintiffs' race as a factor in the decision to search their home.  (PAB 11)  What Detective Lawson actually said was that if the surveillance of 118 Dutton Drive showed that Karen Walker was not African-American, that would have been a "red flag" that she is not related to Dwayne Walker.  (Lawson A164)  If Detective Lawson had reason to believe that the occupants of 118 Dutton Drive were not related to Dwayne Walker, he would not have searched their home.  Plaintiffs misstate the context of this testimony when proffering that the police deliberately searched 118 Dutton Drive simply because the occupants were African-American.   (PAB 11)

## SUMMARY OF ARGUMENTS

1.      The search warrant was valid under the *Franks* test because (1) the misstatements contained in the underlying affidavit are not deliberate falsehoods, and (2) the omitted information, which Plaintiffs identify with the benefit of hindsight, would not have been material to a finding of probable cause.

2.      Aside from the warrant, the search itself was conducted within the manner authorized by the Fourth Amendment.  Though Plaintiffs contend that the search violated two state statutes, violations of state law do not establish a Fourth Amendment violation or any other federal constitutional violation that would form the necessary predicate for Section 1983 liability.  To the extent that Plaintiffs contend there was a violation of the "knock and announce" rule, the execution of this warrant clearly falls within the exception for when knocking and announcing could place the police officers in danger.

3.      Plaintiffs' equal protection claim must fail because Defendants have identified race-neutral reasons for the mistaken entry into Plaintiffs' home, and Plaintiffs have not established that the mistaken entry occurred because of race.

4.      Plaintiffs have not established *Monell* liability against the City because their Answering Brief does not even address the constitutionality of the City's official policy on search warrants (even though it was cited at length and relied upon in Defendants' Opening Brief), nor have Plaintiffs identified any other "policy", as the term is defined in *Monell*, that would establish the City's liability for any constitutional injuries allegedly inflicted by City personnel.

5.      Detective Lawson is entitled to qualified immunity because the *Franks* decision gives police officers flexibility for misstatements in a warrant affidavit, and the *Graham* and *Garrison* decisions give police officers flexibility for mistakenly searching the wrong house.  These authorities confirm that Detective Lawson did not violate any "clearly established" constitutional rights.

6.      Detective Lawson is not subject to agency liability for intentional torts of fellow officers.

**ARGUMENT**

Defendants are entitled to summary judgment because there are no disputes of any material facts. Rule 56(c) provides for summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Although all facts must be construed in a light most favorable to Plaintiffs, the Court cannot defer to a jury's legal conclusion as to whether those facts establish a Constitutional violation. *See Ornelas v. United States*, 517 U.S. 690, 697-699 (1996).

Defendants do not dispute the fact that they entered Plaintiffs' home and detained them by mistake, nor is it disputed that Detective Lawson's affidavit contains some errors. The only disputes are (1.) whether Defendants had probable cause to believe that a first-degree murder suspect was hiding in Plaintiffs' house, and (2.) whether Defendants' search warrant was valid under the *Franks* test, despite the admitted errors in the underlying warrant affidavit. *See Franks v. Delaware,* 438 U.S. 154 (1978)*.* These disputes raise purely legal issues that can be resolved on summary judgment. Based on the arguments below, these legal issues should be resolved in favor of Defendants.

I. **PLAINTIFFS' FOURTH AMENDMENT CLAIM DOES NOT SATISFY THE *FRANKS* STANDARD FOR INVALIDATING A WARRANT**

Though Detective Lawson's warrant affidavit contains three inaccurate statements, none of those statements satisfies the *Franks* standard for invalidating a warrant under the Fourth Amendment. Plaintiffs cannot satisfy the *Franks* standard simply by citing the inaccuracies in the underlying warrant. *Id.* at 171. Plaintiffs must establish that the inaccuracies amount to deliberate falsehoods and/or reckless disregard for the truth. *Id.* Even if Plaintiffs meet that burden, a warrant is still valid under *Franks* if the remaining content of the affidavit establishes probable cause. *Id.* at 171-72.

A. THE THREE MISSTATEMENTS IN DETECTIVE LAWSON'S AFFIDAVIT ARE NOT DELIBERATE FALSEHOODS THAT SATISFY THE FIRST PRONG OF *FRANKS*

Plaintiffs cite the following three misstatements from Detective Lawson's affidavit, none of which meets the *Franks* standard for invalidating a warrant. First, Plaintiffs contend that the following sentence

4

in Paragraph 8 was false: "The informant stated Walker is currently hiding at his mother's house in New Castle and is making plans to flee Delaware." (PAB 9) Because the informant did not use the exact words "currently hiding at his mother's house", Plaintiffs contend that Paragraph 8 amounts to a deliberate falsehood under the first prong of *Franks*. On the contrary, Paragraph 8 is an accurate paraphrase of the informant's tip. The informant testified in his deposition that he told the police: "[Walker's] mother lives in Wilton, and if he wasn't at [the informant's] sister-in-law's house, that's probably mostly likely place he could be found." (Informant A210) The informant further explained that "the first thing [Walker] would do was run to his mom, which he always done whenever he got in trouble." (Informant A224) In light of the informant's testimony, Detective Lawson's paraphrase of the informant's tip in Paragraph 8 is not a deliberate falsehood under *Franks*.

Second, Plaintiffs emphasize the erroneous inclusion of a date of birth in Paragraph 9 of the affidavit. (PAB 12) Though the DELJIS report cited in Paragraph 9 did not contain a date of birth, the mistaken reference to the date of birth in Paragraph 9 does not meet the *Franks* definition of untruthfulness. The *Franks* decision recognized that probable cause does not require "that every fact recited in the warrant affidavit is necessarily correct[.]" *Franks*, 438 U.S. at 165. The Fourth Amendment only requires that the statements in the underlying affidavit are "'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Id.* Detective Lawson knew that his suspect was born on 12/10/82, and so he appropriately (albeit erroneously) accepted as true that the Dwayne Walker named in that DELJIS report was the same Dwayne Walker who was wanted for murder. It is only with hindsight that Detective Lawson now knows it was not the same Dwayne Walker.

Third, Plaintiffs, with the benefit of hindsight, emphasize the misstatement in Paragraph 10 that the utility records for 118 Dutton Drive are registered to Dwayne Walker, Sr. (PAB 12) Though this statement is inaccurate, it is not a deliberate falsehood under *Franks*. The utility records are registered to a person named DeWayne Walker, Sr. Hindsight reveals the spelling of DeWayne Walker, Sr., in those records is

5

different from how murder suspect Dwayne Walker spells his first name. However, on September 14, 2005, Detective Lawson verified the utility records by phone, which means he did not have the opportunity to compare the written spelling of "DeWayne" on the utility records. (Lawson A144) Therefore, Paragraph 10 is valid under *Franks* because the statement about the utility records was "believed or appropriately accepted by the affiant as true." *Id.* at 165. Though Plaintiffs suggest that Detective Lawson could have gathered more information before seeking a warrant, the Third Circuit has recognized that a police officer "[is] not required to undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already existed." *See Merkle v. Upper Public Sch. Dist.,* 211 F.3d 782, 790 n. 8 (3d Cir. 2000).

      B.      <u>NONE OF THE FOUR OMISSIONS IN DETECTIVE LAWSON'S AFFIDAVIT ARE A DELIBERATE FALSEHOOD THAT SATISFY THE FIRST PRONG OF *FRANKS*</u>

Recognizing that the three above-cited misstatements are not deliberate falsehoods that would invalidate the warrant under *Franks,* Plaintiffs attempt to satisfy *Franks* by citing the following four omissions, none of which is material to a finding of probable cause. First, Plaintiffs cite the informant's statement that the suspect's mother may not have the last name Walker. (PAB 19). The operative words are "may not". The suspect was not certain that Dwayne Walker's mother had a different last name. "The Fourth Amendment allows warrants to issue on probable cause, a standard well short of absolute certainty." *See Los Angeles County v. Rettele*, __ U.S. __, 127 S.Ct. 1989, 1993 (2007).

Second, Plaintiffs emphasize that Detective Lawson's affidavit did not disclose that surveillance showed Mrs. Walker driving a Lexus to and from 118 Dutton Drive. (PAB 13) Plaintiffs contend that this omission is material because the informant told the police that Dwayne Walker's mother drove a Nissan Maxima. (PAB 13) Plaintiffs contend that Detective Lawson should have disclosed that the surveillance team saw a Lexus and not a Nissan Maxima at 118 Dutton Drive. (PAB 19) Defedants' emphasis on the Nissan Maxima ignores the confidential informant's testimony that Dwayne Walker's mother had several cars. (Informant A222) The informant explained that Dwayne Walker's family "had a couple dollars, so they

could have been driving just about anything . . . [s]o it's possible that they could have not only been driving a Lexus; they could have been driving a Jaguar."  (Informant A222) This testimony confirms that Karen Walker's vehicle is not material to whether there was probable cause to believe Dwayne Walker was hiding at Karen Walker's house.

Third, Plaintiffs contend that Detective Lawson should have disclosed that the surveillance at 118 Dutton Drive did not show the suspect enter or exit the house.  (PAB 19)  This contention ignores the fact that the suspect was on the run for first-degree murder.  The police could not reasonably expect someone to voluntarily come into plain sight if he is deliberately hiding.

Fourth, with regard to the DELJIS report listing a "Dwayne Walker" at 118 Dutton Drive (A 45), Plaintiffs accuse Detective Lawson of failing to disclose that suspect Dwayne Walker was incarcerated at the time of that DELJIS report (August 2003).  (PAB 12-13)  Plaintiffs base this accusation on a Sentencing Order (B37), which shows that Dwayne Walker was sentenced to four years of imprisonment, beginning in September of 2001.  There is nothing in the record to confirm that Detective Lawson was aware of that Sentencing Order.   In fact, Detective Lawson testified that he had no record of Dwayne Walker's whereabouts for 2003.  (Lawson A229)

In sum, the above-cited omissions do not meet the first prong of *Franks* to invalidate the search warrant.  Therefore, they need not be inserted in Detective Lawson's affidavit when determining the existence of probable cause.   For the reasons set forth in Section I.A.2 of the Opening Brief, the remaining contents of the affidavit establish probable cause.

## II.    DEFENDANTS EXECUTED THE SEARCH WARRANT WITHIN THE PERMISSIBLE BOUNDS OF THE FOURTH AMENDMENT

Aside from the validity of the warrant itself, the execution of the warrant was in accordance with Fourth Amendment standards, based on the authorities discussed more fully in Section I.B of Defendants' Opening Brief.  Without responding to those authorities or citing any other legal authority, Plaintiffs contend that "the level of force used (i.e., a 20 man SWAT Team), was not reasonable."  (PAB 20)  On the contrary, the U.S. Supreme Court affirmed that "it may well be appropriate to use both overwhelming force and surprise in order to secure the premises as promptly as possible [and] the decision to use a SWAT team of eight heavily armed officers and to execute the warrant at 7 a.m. [gives] the officers maximum protection against the anticipated risk." *See Muehler v. Mena,* 540 U.S. 93*,* 108-109 (2005).  The *Muehler* Court further explained that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 109.  Despite *Muehler*, Plaintiffs insist that any level of force is too much because there was little, if any, chance that the suspect was hiding at 118 Dutton Drive.  (PAB 21)

Rather than respond to the authorities cited in Section I.B of Defendants' Opening Brief, Plaintiffs assert the following three grounds for challenging the level of force used in executing the warrant.  First, Plaintiffs contend that the warrant could not be executed by Wilmington police officers because 118 Dutton Drive is located outside of the City limits.  Second, although Plaintiffs concede that the warrant was executed at 6:05 a.m., they contend that Defendants violated 11 Del.C. § 2308, which requires daytime warrants to be executed no earlier than 6:00 a.m.  Third, Plaintiffs contend that the police failed to knock and announce their presence before entering, notwithstanding the recognized exception to the "knock and announce" rule for dangerous felons who could put officers in peril.  For the reasons below, none of these three grounds establishes a Fourth Amendment violation for Section 1983 liability.

8

A.    EXECUTION OF WARRANT OUTSIDE OF CITY LIMITS - 11 DEL.C. §§ 1911& 1941

Wilmington police officers' execution of a search warrant outside of the City limits does not violate the Fourth Amendment.  Though the warrant for 118 Dutton Drive was executed outside of the City limits, it stemmed from a murder that was committed within the City limits.  Yet, Plaintiffs contend that executing the warrant outside of the City limits exceeded the Defendants' jurisdiction.  (PAB 22)  Plaintiffs cite no legal authority that requires Wilmington police officers to stop pursuing a first-degree murder suspect if he crosses the boundaries of the City.  On the contrary, Defendants properly relied on 11 Del.C. §§ 1911 & 1941, which provide state-wide arrest powers for City police officers.  Plaintiffs contend that those statutes only apply to arrest warrants, not search warrants.  Based on that distinction, Plaintiffs argue that Sections 1911 and 1941 do not give Defendants jurisdiction over 118 Dutton Drive because "there was no arrest warrant but a search warrant."  (PAB 22)

This is an illusory distinction because the warrant authorized a search for Dwayne Walker at 118 Dutton Drive so that he could be arrested.  (A36-38)  Thus, Defendants did indeed have an arrest warrant that triggers Sections 1911 and 1941.  In any event, a Fourth Amendment violation cannot derive from non-compliance with state statutes such as Sections 1911 and 1941.  Section 1983 liability can only be established from Constitutional violations or violations of federal statutes. *See Baker v. McCollan*, 443 U.S. 137, 146 (1979)("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law.").

B.    DAYTIME WARRANT - 11 DEL.C. § 2308

Plaintiffs rely on another state statute, 11 Del. C. § 2308, to challenge the execution of the warrant. Section 2308 requires daytime warrants to be executed after 6:00 a.m.  Consistent with Section 2308, Plaintiffs' Complaint averred that the police entered their home at 6:05 a.m. (Pltfs' Cmpl. ¶9)  Nevertheless, Plaintiffs now contend that "[i]t was, *per se*, unreasonable for the SWAT Team to break in before 6:00 AM." (PAB 23)  Having already admitted under oath that the search occurred at 6:05 a.m., Plaintiffs cannot now

claim that Defendants violated Section 2308. Even if there was a technical violation of Section 2308, non-compliance with state statutes does not establish a federal constitutional violation for Section 1983 liability.

      C.     <u>THE "KNOCK AND ANNOUNCE RULE" AND ITS ATTENDANT EXCEPTION</u>

Alternatively, Plaintiffs attempt to construct a Fourth Amendment violation from the "knock and announce" rule, which requires law enforcement officers to knock and announce their presence before entering someone's home. (PAB 23) In this case, the front door of the Walkers' home was already opened when the SWAT team arrived. (A74)

To the extent that Plaintiffs dispute whether the SWAT officers knocked and announced their presence, the "knock and announce" rule would not have applied because the officers might have risked physical peril if the real Dwayne Walker had been hiding at 118 Dutton Drive. The Third Circuit in *Bodine v. Warwick*, 72 F.3d 393, 397 (3d Cir. 1995), recognized that when police officers have "a reasonable belief that they were facing a 'threat of physical violence' . . . , the Fourth Amendment did not require them to knock and announce their presence before entering the house." *See also United States v. Cubbage*, 2003 U.S. Dist. LEXIS 1431, *8 (D. Del. 2003)(confirming that the "knock and announce" rule does not apply when it would place the officers in physical peril).

Plaintiffs contend that Dwayne Walker's criminal history consisted of drug offenses, and therefore, he did not pose a threat that would allow the police to dispense with the "knock and announce" rule. The emphasis on Walker's drug offenses ignores the fact that Walker was on the run for first-degree murder, which is the most violent of all crimes. Because the officers were on the trail of a fleeing murder suspect who stabbed someone to death thirty-six hours earlier, the need to knock and announce would have been obviated, based on *Bodine* and *Cubbage*.

### III. PLAINTIFFS FAILED TO ESTABLISH ANY RACE-BASED DISCRIMINATION TO SUPPORT A VIOLATION OF THE EQUAL PROTECTION CLAUSE

To support their equal protection claim, Plaintiffs contend that Detective Lawson "admitted race was, in effect, the deciding factor in his determination that 118 Dutton Drive, should be invaded." (PAB 24) This is a misrepresentation of Detective Lawson's testimony. Detective Lawson's actual testimony was:

> But as far as race, race has nothing to do with this . . . the only consistency is that my suspect, he was arrested for homicide, was black, and Mr. Walker and his family are black. And that's the only thing. But that has nothing to do with oranges or apples. (Lawson A164)

Despite this testimony, Plaintiffs' represent to the Court that "Lawson says that if the records did not show Karen Walker (whom he believed was his suspect's mother) to be black, the invasion would not have happened." (PAB 24) In fact, Detective Lawson made no such statement. Plaintiffs' paraphrase of Detective Lawson's testimony is taken entirely out of context. Detective Lawson's actual testimony was:

> Counsel:   Are you saying that when you did the DELJIS report on Karen Walker, if that had shown up as a Caucasian woman, would anything have been different in this case?
> Lawson:    Probably.
> Counsel:   And why would this be?
> Lawson:    Because that would throw up a flag to me that maybe it's a different Walker from what I was being told.                                      (Lawson A164)

As of September 14, 2005, there was no "flag" to alert Detective Lawson that he had the wrong address and the wrong Walkers. 118 Dutton Drive was selected for a search not because the occupants were African-American, but because (1) a confidential informant said that Dwayne Walker was likely to be hiding at a house in Wilton, (2) 118 Dutton Drive is within half a mile from Wilton, (3) a DELJIS report listed that address as being in Wilton and also listed a "Dwayne Walker" at that address, and (4) the residents of that address had the same first and last name as Dwayne Walker. These are race-neutral reasons for executing a search warrant at 118 Dutton Drive. Plaintiffs are injecting race into this case as an effort to profit from Detective Lawson's honest mistake of searching the wrong house. Despite this effort, *Harrison v. Christopher, et al.*, 2007 U.S. Dist. LEXIS 38824, *13 (D.Del. May 25, 2007), confirms that a race-based Section 1983 claim is not established merely because a plaintiff is African-American.

11

**IV.    PLAINTIFFS HAVE FAILED TO IDENTIFY AN OFFICIAL POLICY, AS DEFINED BY THE *MONELL* DOCTRINE, THAT WOULD ESTABLISH MUNICIPAL LIABILITY**

_____Plaintiffs have not identified an official custom or policy that would establish *Monell* liability against the City for the entry into Plaintiffs' home.  The *Monell* doctrine holds that "a municipality can only be liable under Section 1983 when the execution of a municipality's policy or custom . . . inflicts the injury[.]"  *See Monell v. Dept. of Special Srvcs.*, 426 U.S. 658, 694 (1978).  Applying *Monell*, Defendants cited the Wilmington Police Department's official policy on search warrant affidavits, which is Directive 6.11(D)(6). (DOB 23)  Defendants argued that this formal policy on arrest warrants complies with the U.S. Supreme Court's definition of probable cause, as set forth in *Illinois v. Gates*, 462 U.S. 213, 232 (1983).  (DOB 23)  The literal text of Directive 6.11(D)(6) replicates the text of the Fourth Amendment's Warrant Clause.

Plaintiffs' Answering Brief does not dispute (or even address) the constitutionality of Directive 6.11(D)(6).  Nor does Plaintiffs' Answering Brief cite any other policy that can be a basis for *Monell* liability.  Plaintiffs only contend that *Monell* liability stems from Detective Lawson's testimony that "the manner in which he conducted his investigation and the manner in which he obtained and executed a search warrant for the invasion of Plaintiffs' home was consistent with the policies of the City." (PAB 25) Indeed, Detective Lawson did comply with the City's policy set forth in Directive 6.11(D)(6), which tracks the Warrant Clause of the Fourth Amendment by incorporating probable cause as the standard for search warrants.

Even if the Court finds that Detective Lawson himself did not strictly adhere to Directive 6.11(D)(6), "a mere showing that a particular officer violated policy, or that better training would have enabled the officer to avoid the injury-causing conduct, is insufficient to establish a municipality's liability under [Section] 1983[.]"  *See Blacknall v. Citarella*, 2006 U.S. App. LEXIS 2377 (3d Cir. 2006); *see also Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985)("[A] single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.").

Plaintiffs' Answering Brief does not argue that Detective Lawson himself violated 6.11(D)(6) or any other specifically identified policy. Instead, Plaintiffs' *Monell* theory is that "Lawson admitted the City accepts that a significant percentage of search warrants procured by Wilmington Officers result in an invasion of the wrong house." (PAB 25). In fact, Detective Lawson made no such admission. On the contrary, here is what Detective Lawson actually said with regard to how often a wrong house is searched:

| | |
|---|---|
| Counsel: | Can you give me a percentage? |
| Lawson: | No, I can't. |
| Counsel: | Is it 50 percent? |
| Lawson: | I'm not – it's less than that. |
| Counsel: | Do you think it's less than 10 percent? |
| Lawson: | Probably. It doesn't happen frequently. . . . _____          (Lawson A158) |

Nonetheless, Plaintiffs argue that "[t]his establishes [that] City policy endorses application and execution of search warrants based on affidavits which contain false information and which omit material information." (PAB 25) This testimony is not enough to establish the *Monell* standard of liability: "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality – a 'policy' as defined by our prior cases – can a city be liable for such failure under § 1983." *See Canton v. Harris*, 489 U.S. 378, 391 (1989).

Plaintiffs' alternative *Monell* argument is that Detective Lawson's affidavit contained misinformation that led to a search of the wrong house, therefore, it must be the City's policy to allow search warrants for the wrong address. (PAB 25-26) This is a disguised respondeat superior theory of liability, but *Monell* clearly held that respondeat superior does not apply to Section 1983 liability. *See Monell*, 436 U.S. at 641. Accordingly, Count III must fail as a matter of law because Plaintiffs concede that the City's official policy on search warrants is constitutional, and Plaintiffs do not cite any other City policy to establish *Monell* liability.[2]

---

[2] Count III alternatively alleged Section 1983 liability for failure to supervise, which was addressed at length in Section IV.C of Defendants' Opening Brief. Plaintiffs did not respond to those argument, nor does Plaintiffs' Answering Brief otherwise contend that there is any liability for failure to supervise. Consequently, Plaintiffs have abandoned any Section 1983 claims for failure to supervise.

**V.   DETECTIVE LAWSON IS ENTITLED TO QUALIFIED IMMUNITY BECAUSE THERE ARE SIGNIFICANT LEGAL AUTHORITIES THAT LEND SUPPORT TO THE LEGALITY AND APPROPRIATENESS OF HIS CONDUCT**

A government official is entitled to qualified immunity unless Plaintiffs can establish an actual violation of a clearly established constitutional right.  Plaintiffs' Answering Brief correctly concedes that a right may not be clearly established "where there are some significant legal authorities which lend support to the legality or appropriateness of the conduct in question." (PAB 27, *citing Couden v. Duffy*, 446 F.3d 483, 495 (3d Cir. 2006)).  Defendants' Opening Brief cited significant legal authorities that address the legality and appropriateness of Detective Lawson's conduct.  (DOB 27-29)

As for the misstatements in Detective Lawson's affidavit, Defendants' cited *Franks* and its progeny, which allow some flexibility for law enforcement officers when making misstatements in warrant affidavits. (DOB 29)  The *Franks* court recognized that not "every fact recited in the warrant affidavit is necessarily [required to be] correct, for probable cause may be founded upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily." *Franks*, 438 U.S. at 165.  Defendants are not suggesting that a reasonable officer in Detective Lawson's position would not know that it is unconstitutional to submit a false affidavit. (PAB 28)   Defendants only contend that as of September 14, 2005, Detective Lawson had no reason to know that some facts in his affidavit were incorrect.

The same is true for the erroneous entry into the wrong house.  Defendants cited *Maryland v. Garrison*, 480 U.S. 79 (1987), which granted qualified immunity for police officers' mistaken entry into the wrong house.  (DOB 28-29)  *See also Graham v. O'Connor*, 490 U.S. 386, 396 (1989)("The Fourth Amendment is not violated by an arrest based on probable cause, even though the wrong person is arrested, nor by the mistaken execution of a valid search warrant on the wrong premises.").  Again, Defendants are not suggesting that a reasonable officer in Detective Lawson's position would not know that it is unconstitutional to search the wrong house. (PAB 28)  Defendants only contend that Detective Lawson had probable cause

14

to believe that a murder suspect was hiding at 118 Dutton Drive as of September 14, 2005.  When a police officer is on the trail of a criminal suspect, "probable cause does not require the officer to investigate every lead or that the officer obtain proof beyond a reasonable doubt." *See Herman v. City of Milville*, 2003 U.S. App. LEXIS 8593, at *5 (3d Cir. 2005).

The above-cited cases underscore the need to allow law enforcement officers some flexibility for inevitable mistakes. *See Garrison,* 480 U.S. at 87 ("[T]he Court has recognized the need to allow some latitude for honest mistakes made by officers in the dangerous and difficult process of making arrests and executing search warrants."). Plaintiffs do not address or respond to any of these authorities, even though they were cited at length and relied upon in Defendants' Opening Brief.  Instead, Plaintiffs ask this Court to strip Detective Lawson of his qualified immunity, based on facts gathered with the benefit of hindsight. (PAB 27-28)

Detective Lawson acted with probable cause as of September 14, 2005, even though hindsight reveals that Detective Lawson's affidavit contained misinformation and the Walkers at 118 Dutton Drive had no connection to murder suspect Dwayne Walker.   A detective's job is to search for criminals who do not want to be found.  When criminals evade the police, they make deliberate efforts to avoid leaving any clues as to their whereabouts. This requires detectives to draw broad inferences from limited information, as Detective Lawson did when preparing his warrant affidavit.  When searching for murder suspects, detectives must act quickly, even with limited information.  Detective Lawson acted within twenty-four hours of the Freeman homicide, despite the limited available information on Dwayne Walker's whereabouts. Qualified immunity assures that law enforcement officers such as Detective Lawson will not be discouraged from acting quickly, despite limited available information, when searching for murder suspects and other dangerous criminals.

**VI.    DETECTIVE LAWSON IS NOT SUBJECT TO AGENCY LIABILITY FOR THE ALLEGED TORTS OF FELLOW OFFICERS, AND PLAINTIFFS HAVE NONETHELESS FAILED TO ESTABLISH THE PRIMA FACIE ELEMENTS OF THE TORTS OF BATTERY AND FALSE IMPRISONMENT**

Plaintiffs misapply the law of agency when contending that Detective Lawson is vicariously liable for any false imprisonment or battery allegedly inflicted by the SWAT officers.  (PAB 29)  This argument mistakenly assumes that the SWAT officers are Detective Lawson's agents.  On the contrary, Detective Lawson and the SWAT officers are co-agents of the Wilmington Police Department.

Plaintiffs correctly note that Delaware courts recognize principal-agency liability, as it is set forth in RESTATEMENT (Second) OF AGENCY §§ 264 & 343.  (PAB 30)  However, a principal-agency relationship must be established before there can be principal-agency liability.  There is no such relationship in this case because Detective Lawson does not meet the definition of "principal" that is set forth in RESTATEMENT (Second) OF AGENCY § 2(1): "a principal . . . controls or has the right to control the physical conduct of the [agent] in the performance of the service [to the principal]".  Detective Lawson was not a member of the SWAT team.  (Lawson A114)  Although Detective Lawson enlisted the assistance of the SWAT team, he did not supervise or direct the execution of the SWAT raid itself.  (Lawson A119-120) He did not even enter the house until the SWAT officers secured the premises. (Lawson A113) Therefore, Detective Lawson's relationship to the SWAT officers does not meet the principal-agency relationship defined in Section 2(1), which is a requisite for imposing principal-agency liability.

Aside from Plaintiffs' misapplication of agency law, Plaintiffs also fail to address the prima facie elements of the torts of battery and false imprisonment.  As explained in Section V.B of Defendants' Opening Brief, a prima facie element of battery is that the defendant must cause a harmful or offensive contact.  (DOB 26) Defendants do not dispute the fact that SWAT officers detained the Walker family until confirming that the murder suspect was not hiding in their home.  The only dispute is whether such contact meets the legal standard of "harmful or offensive" contact, as set forth in RESTATEMENT (Second) OF TORTS § 13.

There is nothing in the record to establish that the SWAT officers had any physical contact

whatsoever (let along harmful or offensive contact) with Mrs. Walker and DeWayne, Jr.  Though the officers ordered them to gather in the family room with DeWayne, Sr., there is nothing in the record to establish that Mrs. Walker and DeWayne, Jr., were physically escorted (let alone forced) into the family room.  (A79 & 81)  DeWayne, Sr., was the only Plaintiff with whom the officers had any physical contact (he was handcuffed without any resistance).

Defendants argued that such contact with DeWayne, Sr., did not meet the "harmful or offensive" standard for battery because courts have recognized that "the need to detain multiple occupants [makes] the use of handcuffs all the more reasonable."  *See Meuhler*, 540 U.S. at 100.  (DOB 25-26)  Plaintiffs do not cite any authority to hold that such contact meets the "harmful or offensive" standard, which is an indispensable prima facie element of the tort of battery.

The same is true for Plaintiffs' claim of false imprisonment.  A false imprisonment is "the unlawful restraint of someone's physical liberty."  *See Oakes v. K-Mart*, 1981 Del. Super. LEXIS 688, *5-6 (Del. Super. Ct. 1981).  Detective Lawson himself did not restrain anyone's physical liberty.  As soon as he entered Plaintiffs' home and realized he had the wrong Walkers, he released Plaintiffs from custody.  (Lawson A113-115)  Even if other SWAT officers may have technically restrained the Walkers' physical liberty before Detective Lawson entered the home, their actions cannot be imputed to Detective Lawson under principal-agency liability, as explained more fully above.

Because Plaintiffs cannot establish that any actions of Detective Lawson himself (as opposed to his fellow officers) would establish the prima facie elements of false imprisonment and battery, Detective Lawson has no liability for these tort claims.  As for the individual SWAT officers, Defendants have waived any claims against them because they were not added as co-defendants after they were identified by name in the Rule 26 disclosures.  Consequently, the state tort claims set forth in Counts VII and VIII must fail.

## CONCLUSION

_____For the reasons set forth above and in the Opening Brief, Defendants, the City of Wilmington and

Detective Michael R. Lawson, Jr., respectfully move this Honorable Court to grant their Motion for Summary

Judgment on all counts of the Complaint. _____

 

 

_/s/ Alex J. Mili, Jr._

Alex J. Mili, Jr., Esquire (I.D. #4125)
Senior Assistant City Solicitor
Louis L. Redding City/County Building
800 N. French Street, 9th Floor
Wilmington, DE 19801
(302) 576-2175
Attorney for Defendants City of Wilmington and
Detective Michael R. Lawson, Jr.

DATE: July 23, 2007

18

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

DeWAYNE WALKER, SR, KAREN          :
WALKER, his wife, D.W., JR., minor       :
child, and T.W., minor child,                    :
                                                                   :
      Plaintiffs,                                      :          C.A. No. 06-288 _____
                                                                   :
      v.                                                    :
                                                                   :
THE CITY OF WILMINGTON, a political    :
subdivision of the State of Delaware,       :
DETECTIVE MICHAEL R. LAWSON, JR.,   :
individually and in his official capacity, and :
UNKNOWN ENTITIES,                            :
                                                                   :
      Defendants.                                   :

**CERTIFICATE OF SERVICE**

      I, Alex J. Mili, Jr., Esquire, hereby certify that on this 23rd day of July, 2007, I filed the Defendants'

Reply Brief in Support of Their Motion for Summary Judgment with the Clerk of Court using CM/ECF

which will send notification of such filing(s) that this document is available for viewing and downloading

from CM/ECF to the following:

                        Victor F. Battaglia, Sr., Esquire
                        Philip B. Bartoshesky, Esquire
                        Biggs & Battaglia
                        921 Orange Street
                        Wilmington, DE 19801

                                      _/s/ Alex J. Mili, Jr.
                        Alex J. Mili, Jr., Esquire (I.D. #4125)
                        Senior Assistant City Solicitor
                        Louis L. Redding City/County Building
                        800 N. French Street, 9th Floor
                        Wilmington, DE 19801
                        (302) 576-2175
                        Attorney for Defendants City of Wilmington
                        and Detective Michael R. Lawson, Jr.