**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| DeWAYNE WALKER, SR, KAREN | : | |
| WALKER, his wife, D.W., JR.., minor | : | |
| child, and T.W., minor child, | : | |
| | : | |
| Plaintiffs, | : | C.A. No. 06-288 SLR |
| | : | |
| v. | : | |
| | : | |
| THE CITY OF WILMINGTON, a political | : | |
| subdivision of the State of Delaware, | : | |
| DETECTIVE MICHAEL R. LAWSON, JR., | : | |
| individually and in his official capacity, and | : | |
| UKNOWN ENTITIES. | : | |

**DEFENDANTS' STATEMENT RELATING TO SUMMARY JUDGMENT**

Defendants, by and through their undersigned attorney, hereby files the foregoing

statement in response to the Court's February 13, 2008 Order and states as follows:

I.    Material Facts Which Movants Contend There is No Genuine Issue to Be Tried[1]

1.    On September 15, 2005, a team of Wilmington police officers mistakenly

executed a search warrant at the residence of Plaintiff, DeWayne Walker.  The officers

mistook Plaintiff's residence for the possible temporary hiding place of a murder suspect,

Dwayne Walker.  While very similar, we note that the Plaintiff and the murder suspect

spell their first names differently ("DeWayne" versus "Dwayne").  Also, the Plaintiff's

full name is DeWayne Walker, Sr., while the murder suspect's full name is Dwayne A.

Walker.

---

[1] After reviewing both parties' summary judgment briefs, Defendants believe that the facts listed
herein are not legitimately in dispute and require the entry of summary judgment, notwithstanding
the existence of additional factors which Plaintiff will inevitably argue preclude such relief.

2.      On September 13, 2005, Dewayne Freeman was stabbed to death at or near Third and Franklin streets in Wilmington.  Wilmington police determined that Dwayne Walker, who has a date of birth of December 10, 1982, was the likely perpetrator.

3.      Detective Michael R. Lawson, Jr. was the lead investigator for the Freeman homicide.

4.      On September 14, 2005, a confidential informant contacted Detective Jeff Silvers, who was not working on the Freeman homicide, and informed him that Dwayne Walker's "mother lives in Wilton, and if he wasn't at [the informant's] sister-in-law's house, that's probably the most likely place he could be found."  The informant did not know the exact address for Dwayne Walker's mother, but believed that she lived behind the Wilton area.

5.      Detective Silvers claims this informant was reliable because he had provided accurate information in the past.

6.      Based on the informant's statement, Silvers entered the name Dwayne Walker in DELJIS[2] to determine if anyone with that name was residing in the Wilton area.  The search yielded a larceny report for 118 Dutton Drive in Wilton Park.

7.      According to Plaintiffs, the report apparently refers to a 2003 incident in which Plaintiff Karen Walker reported to the New Castle County police that her son's bicycle had been stolen from Wilton Park in New Castle.

---

[2] DELJIS refers to the criminal justice information database used by law enforcement agencies.

8.      On the DELJIS report, minor Plaintiff "DeWayne" Walker, Jr., is incorrectly referred to as "Dwayne Walker," just as the murder suspect spells his first name.  However, the report correctly states that Plaintiff DeWayne Walker Jr. has no middle name and is a junior, unlike murder suspect Dwayne Walker.

9.      Silvers gave this report to Lawson.  Lawson believed that the report referred to Dwayne Walker.

10.     As a result, Lawson put 118 Dutton Drive under surveillance and believed that this address was Dwayne Walker's family's home.

11.     Lawson then applied for a warrant to search for Dwayne Walker at 118 Dutton Drive.  In Larson's Affidavit of Probable Cause, he stated that a confidential informant told him that Dwayne Walker was hiding at 118 Dutton Drive.  The informant did not actually use the words "currently hiding," but rather said that Dwayne Walker's "mother lives in Wilton, and if he wasn't at [the informant's] sister-in-law's house, that's probably the most likely place he could be found."  Larson also indicated that public utility bills indicated that Dwayne Walker resided at 118 Dutton Drive.  Plaintiffs, however, assert that the utility bills showed that "Dewayne Walker" resided there, not "Dwayne Walker."  For purposes of this statement, Defendants will assume that Plaintiffs are correct in this assertion.

12.     Because Dwayne Walker was wanted for first-degree murder, the SWAT team assisted Lawson in executing the search warrant.  The SWAT team entered the residence at 118 Dutton Drive and gathered the Walker family in the living room, and secured the entire premises.  Lawson then entered the house and realized that Plaintiff DeWayne Walker was not the same Dwayne Walker wanted in connection with the

Freeman homicide. According to Plaintiffs' Complaint, the police entered their home at approximately 6:05 a.m.

II.     <u>Legal Issues Upon Which Judgment Is Sought.</u>

1.     The Fourth Amendment claim (Counts I and IV) must fail because the police entry into Plaintiffs' home was authorized by a search warrant that is valid under the two-prong *Franks* test, and the execution of the search warrant was reasonable in duration and manner.

2.     The search warrant was valid under the *Franks* test because (1) any misstatements contained in the underlying affidavits are not deliberate falsehoods, and (2) any omitted information would not have been material to a finding of probable cause.

3.     The search itself was conducted within the manner authorized by the Fourth Amendment. Though Plaintiffs contend that the search violated two state statutes, a notion which Defendants disagree, violations of state law do not establish a Fourth Amendment violation that would form the necessary predicate for § 1983 liability. To the extent the Plaintiffs contend there was a violation of the "knock and announce" rule, the execution of this warrant clearly falls within the exception for when knocking and announcing could place the officers in danger.

4.     The Fourteenth Amendment claims (Counts IV and VI) must fail because (1) Section 1983 claims arising from a search and arrest are only analyzed under the Fourth Amendment's reasonableness standard, not the Fourteenth Amendment's Due Process Clause, and (2) Plaintiffs have not proven any purposeful discrimination to establish a Section 1983 claim based on the Equal Protection Clause.

5.      The Section 1983 claim for negligence, false arrest, battery and civil rights (collectively Count II) must fail because state torts are not constitutional injuries for which Section 1983 provides a remedy.

6.      The Section 1983 claim for  failure to train/supervise (Count III) must fail because there has been no constitutional injury, no deficiency in the training of City police officers, and no deliberate indifference by supervisors or City policymakers toward Plaintiffs' constitutional rights.

7.      The state law claims for battery and false imprisonment (Counts VII and VIII) are barred by the privilege of arrest, which allows law enforcement officers  to enter a home, detain its occupants, and use some degree of force when executing a valid search warrant.

8.      Detective Lawson has qualified immunity for Plaintiffs' federal constitutional claims (Counts I through VI) because he acted with probable cause, which precludes an actual violation of a clearly established constitutional right.  Further, the *Franks* decision gives police officers flexibility for misstatements in a warrant affidavit, and the *Graham* and *Garrison* decisions give police officers flexibility for mistakenly searching the wrong house.  These authorities confirm that Detective Lawson did not violate any clearly established constitutional rights.

9.      Plaintiffs' equal protection claim must fail because Defendants have identified race-neutral reasons for the mistaken entry into Plaintiffs' home, and Plaintiffs have not established that the mistaken entry occurred because of race.

10.     Detective Lawson is not subject to agency liability for intentional torts of fellow officers.

DATED:        February 29, 2008              **CITY OF WILMINGTON**


                                              /s/ Gary W. Lipkin
                                              Gary W. Lipkin (Bar I.D. No. 4044)
                                              Assistant City Solicitor
                                              City/County Building
                                              800 N. French Street
                                              Wilmington, DE 19801
                                              302.576.2187

                                              Attorney for Defendants

## <u>CERTIFICATE OF SERVICE</u>

I, Gary W. Lipkin, do hereby certify that on February 29, 2008, I caused to be served the foregoing document on the following counsel of record via e-filing:

Victor F. Battaglia
Philip B. Bartoshesky
Biggs and Battaglia
921 Orange St.
Wilmington, DE 19801

<u>/s/ Gary W. Lipkin (Bar I.D. No. 4044)</u>

7