IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DeWayne WALKER, SR, KAREN WALKER, his wife, D.W., JR.., minor child, and T.W., minor child, | : : : : | |
| Plaintiffs, | : : | C.A. No. 06-288 KAJ |
| v. | : : : | |
| THE CITY OF WILMINGTON, a political subdivision of the State of Delaware, DETECTIVE MICHAEL R. LAWSON, JR., individually and in his official capacity, and UKNOWN ENTITIES, | : : : : : : | |
| Defendants. | : | |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT RELATING TO SUMMARY JUDGMENT

Plaintiffs, pursuant to this Court's Order of February 13, 2008, respond to Defendants' Statement Relating to Summary Judgment as follows:

This case concerns the invasion of the Plaintiffs' home by a heavily armed SWAT team of some 20 City of Wilmington's Police Officers. This home invasion took place outside of Wilmington in the pre dawn hours of September 15, 2005. Plaintiff Dewayne Walker, his wife, Karen, and their two minor children were at home preparing to go to work and or school when the raid took place. The SWAT team rounded up the Plaintiffs held them up at gunpoint then ransacked their home. The raid put not only Plaintiffs but the SWAT team officers at risk of serious harm or death. The City raided Plaintiffs' home only because the name of a suspect in a stabbing was similar to Plaintiffs and all were African Americans. Clearly, placing all of these individuals at risk of death under these

circumstances resulted from deliberate acts of misconduct.

I. **COUNTER STATEMENT OF MATERIAL FACTS WHICH DEFENDANT'S CONTEND THERE IS NO GENIUNE ISSUE TO BE TRIED.**

1. Defendants assert the Wilmington's Police "mistakenly" executed a search warrant at the Plaintiffs' residence. In fact, the raid was conducted pursuant to a warrant which Defendant detective Lawson obtained by submitting an affidavit to a magistrate (see Appendix to Defendant's Brief A-50 ) (hereafter Def App) which contained representations he knew were false and in which he knowingly omitted material facts. The Defendants engaged in a death threatening armed raid with callous and deliberate disregard of the accuracy of allegations  (See paragraph 11 infra.) Defendants' purported reliance on the similarity of the names "DeWayne" and "Dwayne", to justify their actions is disingenuous. Due to information they retrieved from DELJIS reports, Defendants were at all times aware Plaintiffs DeWayne Walker Sr. and Jr. (his son) have no middle name but the suspect DeWayne A. Walker did (hereafter DAW) and were aware DAW's description (height, weight, age etc.) except for his race, did not match Plaintiffs. The record simply does not support Defendants claim of innocent mistakes.

2. Defendants' statement is accurate.

3. Defendants' statement is accurate.

4. Defendants accurately state the Confidential Informant (hereafter "C.I.") testified only that he believed DAW probably would go to his mother's house in the Wilton Area. Defendants omit, however, that in the affidavit submitted to a magistrate, Lawson falsely swore the CI said DAW "is currently hiding at his mother's house in New Castle and is making plans to flee Delaware." (Def

2

App A-50 ) Defendants also omit the C.I. told them DAW's mother drove a maroon Nissan Maxima and lives in Wilton with her boyfriend and daughter. (Def App A- 213-214) Defendants omit that when they put the Plaintiffs house under surveillance they saw no evidence DAW was there; saw no daughter or boyfriend; and saw no Nissan Maxima. Defendant's omit the only car observed was a black Lexus. Def App A-71, 150-153) In a desperate attempt to justify his misconduct, Lawson testified falsely at the deposition the C.I. told police DAW's mother drove a dark colored Lexus. (Def App A-150-156)

5. Defendants accurately state Detective Silver's claim. Defendants omit the C.I.'s initial assertion that DAW was at his sister-in-law's house was wrong.

6. Defendants accurately state the entry of the name "Dwayne Walker" yielded a DELJIS report of a larceny. That Report, did not show a larceny at 118 Dutton Drive in Wilton Park, as Defendants assert. The Report describes a larceny in Wilton Park and states the victim, Plaintiff Karen Walker and a witness to the larceny Plaintiff, Dwayne (sic) Walker Jr., (no middle name "NMN") live at 118 Dutton Drive. Dutton Drive is not in Wilton Park and the DELJIS Report does not say it is. (DEF APP-45)

7. Defendant's statement is accurate.

8. Defendant's statement is accurate.

9. Defendant's accurately report Lawson's testimony as to his belief. However, as set forth in paragraphs 11 and 12 infra, it is not a credible assertion that Lawson actually believed the 2003 DELJIS Report which identified Plaintiff Dwayne (sic) Walker Jr., (NMN) was referring to the suspect DAW. Defendant's records establish DAW was in prison in 2003. ( Appendix to Plaintiffs' Brief B- 37, 68) (hereafter Pl. App B- )

3

10. Defendants correctly state 118 Dutton Drive was put under surveillance at Defendant Lawson's request. Defendants omit that the surveillance gave no indication that DAW, nor DAW's mother were at or had never been to 118 Dutton Drive. The surveillance team did not see DAW's mother's car, a Nissan Maxima at that address nor anyone matching the description of DAW, DAW's mother's boyfriend or daughter, which the C.I. said lived with DAW's mother. Rather, surveillance showed Plaintiff Karen Walker driving her teenage son, DeWayne Jr., in their Lexus to Chester PA, and that there may have been a small child living at 118 Dutton Drive. ( Def App A-71, 150-153) Defendants also omit Lawson falsely testified the C.I. stated DAW's mother drove a Lexus. The surveillance actually firmly established that 118 Dutton Drive, Plaintiffs' residence, had no connection to DAW nor DAW's mother.

11. With respect to Lawson's affidavit of probable cause, Defendants correctly indicate Lawson falsely swore the C.I. stated DAW was currently hiding at his mother's house in New Castle. The C.I. actually stated only he assumed DAW would probably go to his mother's house. Defendants leave out that Lawson falsely swore the C.I. said DAW was making plans to flee Delaware. The informant never said that. Defendants admit Lawson falsely swore Connective Power Company records showed Dwayne Walker was registered at 118 Dutton Drive. Those records clearly show Plaintiff DeWayne Walker lives at that address. (Pl. App B-31) Defendants left out Lawson falsely swore there was a DELJIS record that showed Dwayne Walker Sr., with the current address of 118 Dutton Drive. The DELJIS record actually shows DeWayne Walker at that address and gives a description of Plaintiff (including height weight and photograph) that do not match DAW. (Def App A-49) Defendants also leave out that Lawson falsely swore there was a DELJIS record that

showed a Dwayne Walker with a DOB 12-10-82 with a previous incident at 118 Dutton Drive. There is no such DELJIS record.

Importantly, Defendants completely ignore material items, which Dawson left out of his affidavit of probable cause. Lawson left out the fact the DELJIS record relating to the 2003 theft, Def App A-65) describes a Dwayne Walker <u>Jr.</u> with no middle name, while the suspect is not a junior and has a middle name. Lawson, knowingly omitted Dwayne Walker Jr., with no middle name in the DELJIS report could not have been DAW, because in 2003 DAW was in jail. Lawson knowingly left out the C.I. had stated: that DAW's mother may not have had the last name "Walker" while all of the residents of 188 Dutton Drive were named Walker; that the suspect's mother drove a Nissan Maxima while surveillance of 118 Dutton Drive showed only a Lexus at that address; that the DAW's mother lived with her boyfriend and his daughter, while the surveillance team saw only an adult woman, teenage boy and baby at that address.

12.     Defendant's characterization of the raid on plaintiff's residence is misleading. The SWAT team broke through the front door before dawn in violation of Delaware Law and the warrant. They did not simply gather, "the Walker family in the living room and secured the entire premises." They, in fact, broke through a locked door without knocking (violating the long standing constitutional requirement to knock and announce); manhandled plaintiffs DeWayne Walker Jr., and Sr.; held the Plaintiffs, (including an infant) at gun point with automatic weapons; and ransacked the house. Though they now deny the door was locked or that they caused any damage, in fact, the screen door was partially ripped from its hinges, door locks were broken, floors damaged, carpets stained, and attic door, furniture and stair railing all broken. Defendants omit that while they now deny witnessing any damage Lawson told Plaintiffs to call the City to report the damage done to their

house. Pl App B-44-64; Def App-115, 229-231) Defendants also omit that the City police undertook this raid secretly, without notice to the New Castle County Police or any other law enforcement agency, in a violation of Delaware Law, (Pl App-20)

II.                                    __LEGAL ISSUES__

1. Defendants assert Plaintiffs' Fourth Amendment Claims must fail because their actions were authorized by a search warrant. Defendants misconstrue both Plaintiffs' claims and the law. Simply because a warrant issued does not mean the search was valid. In this case the warrant issued only because defendant Lawson submitted an affidavit to a magistrate which he knew contained false information and which he knew omitted material information. It is undisputed that where a warrant issues based upon false and misleading information, or where essential facts are omitted, the warrant is invalid and the search violates the Fourth Amendment.

2. Under Franks v. Delaware, 438 U.S. 154 (1978) and Sherwood v. Mulvihill, 113 F. 3d 396 (3d Cir. 1997) liability under 42 USC §1983 attaches if a law enforcement officer knowingly, or with reckless disregard of the truth, makes false statements or omissions in a warrant application, where such statements or omissions are material to the finding of probable cause. Defendants incorrectly claim there must be deliberate falsehoods in the affidavit for liability to attach. Only if the facts are construed in the light most favorable to Defendants could the misstatements and omissions be considered innocent or negligent mistakes. As set forth in Part I paragraphs 10-12 supra, Lawson knowingly made false statements in his affidavit and either knowingly or omitted numerous material facts. At the very least there are questions for a jury as to whether there was probable cause for the issuance of the warrant and the raid on Plaintiffs' home. These are questions for a jury in an action

under 42 USC § 1983. Sherwood v. Mulvihill supra, see also Curly v. Klem, 29 F.3d 271 (3d Cir.2002).

3. The standards for evaluating whether a search and seizure of a person was effected by the use of excessive force are set forth in Graham v. Connor 490 U.S. 386 (1989) The test is whether under the totality of the circumstances the level of force used was objectively reasonable. Issues of reasonableness are in almost every case questions for a jury which should not be resolved on summary judgment. Abraham v. Raso 183 F.3d 279, 290 (3$^d$Cir 1999). Here, the totality of the circumstances demonstrates issues of fact as to whether the level of force used was reasonable. Based on the surveillance of the Plaintiffs' house, defendants knew or should have known there was no suggestion of danger at that location. Also, the execution of this warrant clearly violated the long standing "Knock and Announce Rule." Richards v. Wisconsin 520 U.S. 385 (1997). The fact the crime being investigated was a murder is not dispositive, and the ordinary risks that surround a general category of criminal behavior are insufficient in and of themselves to create the exigent circumstances which would allow dispensing with the knock and announce rule. Here a 20 man SWAT team (including K-9 Units) invaded the Plaintiffs' home before 6am. The warrant they were executing gave authority to search for a pocketknife and clothing. Clearly there are issues of fact as to whether the use of force in this case was reasonable under the circumstances. Defendants wrongly assert Plaintiffs have contended the search was invalid because it violated two state statutes. In fact, it was Defendants who cited the two state statues as authority for their actions. (Answer to Complaint Pl. App B-20) (However neither of those statutes (i.e. 11 Del. C. §§ 1911 and 1941) authorize this search outside the City by Wilmington Police.

4. The Defendants' assertion that Plaintiffs have not proven any purposeful discrimination is

based on a construction of facts favoring Defendants. Lawson himself has admitted race was a deciding factor in his determination Plaintiffs' home should be invaded. Lawson testified if the records had not shown plaintiff Karen Walker to be an African American, the invasion would have not occurred. Def. App. A-164

5 and 6. Contrary to Defendants' assertions Plaintiffs have not made a Section 1983 claim for negligence, false arrest, or battery. Rather in Counts 2 and 3 of the Complaint Plaintiffs have asserted section 1983 claims against the City of Wilmington based on the City ratifying Defendant Lawson's conduct and/or the City's failure to adequately train and supervise Lawson. These are valid basis for municipal liability under 42 USC § 1983.

7.  Defendants' assertion the state law claims for battery and false imprisonment are barred by the arrest privilege assumes the warrant obtained was valid. However, there can be no arrest privilege where, as here, the warrant is invalid and illegally executed.

8.  Defendants assert Lawson should enjoy qualified immunity because he acted with probable cause and made innocent mistakes in searching the wrong house. However, as shown, supra, the mistakes were not innocent, rather were either knowing or reckless falsehoods or omissions in an affidavit of probable cause. There can be no qualified immunity under the circumstances. Defendants cannot seriously argue that obtaining a warrant through a false affidavit does not violate clearly establish constitutional right. There can be no qualified immunity.

9.  Defendants assert Plaintiffs' equal protection claims must fail because Defendants have identified race neutral reasons for their actions. As set forth in paragraph 4 supra. Lawson has admitted Plaintiffs' race was a deciding factor in the decision to raid their home.

10. In arguing Defendant Lawson cannot be liable for the actions of his SWAT team, Defendants ignore the warrant was issued to Lawson and empowered <u>him</u> to obtain the assistance of other police officers to execute the warrant. The SWAT team took actions at Lawson's instruction and executed the warrant which Lawson illegally obtained. The SWAT team members are Lawson's agents and he is liable for their actions under state tort law. For these reasons Defendants' Motion for Summary Judgment must be denied.

BIGGS AND BATTAGLIA

/s/VictorF.Battaglia
VICTOR F. BATTAGLIA  ( ATTY #156)
921 North Orange Street
Post Office Box 1489
Wilmington, DE 19801
(302) 655-9677
 Attorney for Plaintiffs